HOWARD A. LA ROSE et al., Respondents, v. KALMAN BACKER et al., Appellants, and ANTHONY SERVIDONE et al., Respondents.

Third Department, July 27, 1960.

*Harold E. Blodgett, Howard Levine* and *Henry Levine* for appellants.

*Millington & Garlick* (*William W. Millington* of counsel), for Howard La Rose and others, respondents.

*Nicholas D. Morsillo* for Anthony Servidone, respondent.

*Beyerl, Higgins, Houlihan, Roberts & Beyerl* for The Schenectady Savings Bank, respondent.

*Poersch, Sevits & Riemer* for Central Plumbing and Heating Supply, respondent.

*La Pann & Reardon* for Electrical Supply & Parts Co., respondent.

*Irving L. Waxman* for Davis Acoustical Corp., respondent.

*Myron J. Cohn* for King Paving Corp., respondent.

*John Angerosa* for Emilio P. Rodriguez, respondent.

*Leonard Litz* for American Tile Co., respondent.

*Spira & Hershkowitz* for Rubin Glass & Mirror Co., Inc., respondent.

*John A. Leary* for Monahan & Laughlin, respondent.

*Benjamin Segal* for Kenneth Hallenbeck, respondent.

REYNOLDS, J. This is an appeal from a judgment of foreclosure and sale against certain property owned by the defendants-appellants, Kalman Backer and Henry Shapiro, from the order ratifying and confirming the Referee's report, Supreme Court (BEST, J.), and from the Referee's report in favor of plaintiffs-respondents and defendants-respondents. The defendants-appellants (the "Owners") had contracted with the general contractor Anthony Servidone for the construction of the King George Motel near Lake George Village, Warren County. Plaintiffs-respondents were materialmen and subcontractors who performed and furnished materials for the general contractor. Joined as parties defendant were other subcontractors, materialmen and the general contractor.

Backer had financed the building of the Country Squire Motel located on Route 20 near Guilderland. He decided he wanted another motel substantially similar to be built on a promontory overlooking Lake George. After having the land cleared and leveled, construction was started and the footings were actually poured in April, 1956. This was done by hourly labor. The supervisor of this work withdrew from the job, however, and Backer looked around for a general contractor to continue the construction. Servidone was engaged under a contract. This contract provided that Servidone should undertake the construction of the motel " as per plans and specifications therefor, hereto attached and made a part hereof ". Thereafter follows a list of modifications from those plans and specifications. The contract price was $130,000, " subject to additions and deductions as provided under the general conditions of this Agreement ". In respect to this, item " Tenth " provides: " Changes in the work, or in the performance of the contract, either by alterations, additions to, or deductions from work, may be made by mutual consent, the same to be in written form, which shall include compensation and allowances to be made for such additions, corrections and deductions. The furnishing of extras shall be governed by this provision, and there shall be no charge therefor unless the same are furnished at the request of the Owners, in writing, with agreement as to prices therefor."

The rest of the contract contains the usual provisions including a provision for arbitration in the plans and specifications. This was executed on May 7, 1956. Four modifications were

subsequently made in accord with item "Tenth", all relating to changes in the original plans and specifications. These plans and specifications were, in fact, the same ones used for the construction of the Country Squire Motel and the evidence seems to substantiate the fact that they were an integral part of the negotiations leading up to the execution of the contract. The evidence also substantiates the fact that the major changes in the plans were incorporated into the contract and its modifications, although the footings, as already stated, were laid so as to add a bit to the width of the building over what the plans called for. Prior to the contract's execution, however, Servidone had inspected the Country Squire Motel and the site for the new motel upon which these footings had already been poured.

The contract called for the work to be completed on August 1, 1956, with a penalty clause for late completion and a bonus clause for early completion. Servidone's work was not completed until November 15. There is evidence that the owners, Backer in particular, were in constant attendance at the job and actually did much of the supervising. There is also evidence that the plans and specifications were not usable and made more impossible to follow by Backer's continual interference. It is claimed that he persisted in making changes of one sort or another some of which were embodied in the contract or its modifications and some of which were not.

By November 15 the owners had paid Servidone $84,142 of the contract price, but withheld the rest claiming inferior workmanship, for which adjustments would have to be made. Servidone, on the other hand, claimed a substantial sum for extras and in the meantime this action was started by plaintiffs. On March 8, 1957 Servidone served a demand for arbitration and on April 25 the parties executed an agreement setting up the arbitration machinery, and it was provided that the award should be made on or before May 17, 1957 and filed with the Clerk of the Supreme Court of Warren County which would serve as an award upon which judgment could be entered. No agreement was reached by the two arbitrators by May 17, but in August all the parties agreed that they should continue the arbitration. On October 21 a document was signed by both arbitrators which listed extra work by the contractor as amounting to $18,792 and omissions and faulty construction on his part to total $42,554. This would mean that, with the $84,142 already paid, the owners, when balancing the extras against the omissions, owed another $22,096, or a total contract price of $106,238, because the omissions so far exceeded the extras. Be that as it may, this decision was never confirmed and conse-

quently never filed so that judgment could be taken. Servidone's arbitrator denied that he knew what he was signing, but this incredible testimony was pretty well shaken on cross-examination on the trial of the lien action before the Referee.

The trial of this lien action started (before the Referee) on February 10, 1958 and the hearings ended on June 15, 1959. Servidone, as party defendant, claimed over against the owners the sum of $188,505.20 ($84,142 of which had already been paid leaving a balance of $104,363.20). The original contract was admitted and the additional sum represented extra costs incurred because of the changes incorporated at the special request of the owners. Subsequently another cause of action was added under the theory of *quantum meruit*. The owners counterclaimed for $87,000 because of faulty work and omissions.

During the hearing testimony was given by materialmen, sub-contractors — practically everyone who had anything to do with this job. Among these witnesses were two experts, an engineer and an architect, who testified after inspecting the finished motel, that in their opinion the labor and materials performed and supplied by Servidone were of the fair and reasonable value of $234,500. The two architects who served as arbitrators also testified and, as before noted, their appraisal is in the record.

At the conclusion, the Referee's report awarded Servidone $234,500 as the total sum due on the contract. Obviously the Referee had used as the only measure of value the testimony of the two experts. This substantial sum made it necessary, of course, to grant Servidone's motion to increase the sum demanded in his claim. Thus Servidone was awarded $45,994.80 more than he had asked for in his original pleadings.

However, in our view, the whole foundation of the Referee's award is erroneously laid. What happened to the contract between the parties? The Referee never made a finding as to it. It is manifest that in making the award he gave no consideration to this contract whatsoever. In order to do this it would seem that he would have had to remove the contract from the case in some fashion. There is no finding that the agreement was ever breached, abandoned or rescinded. Many modifications in the plans and specifications were made in the original agreement and some in writing made thereafter as provided for in the original agreement. Moreover, Servidone, before he made his bid, had inspected the Country Squire Motel and the Lake George site and was fully aware of the plans and specifications to be used. The testimony indeed shows Backer to have been somewhat officious and meddlesome during the course

of construction. But any added work or costs arising because of these actions could easily be classed as extras properly to be figured beyond the contract price. In our view the evidence shows that the plans and specifications were basically followed in the over-all construction. The changes made, outside of those provided for in the writings, appear to be minor when considered in light of the total job. The biggest change not provided for in the writings seems to be a shift from individual room heaters to central heating. Probably the greatest disadvantage caused by such a change would be delay, the additional cost, if any, being an extra. Since the penalty clause for delay was not pressed it does not seem that such delays are material to the consideration of whether or not the contract was abrogated.

In determining whether or not a contract was abandoned the conduct of the parties is closely scrutinized. It is important to note that after Servidone had substantially completed the job (he never abandoned it for purported cause) and the bickering had started over payment, it was he, Servidone, who demanded arbitration pursuant to provisions in the plans and specifications which were a part of the agreement. His first cause of action in the lien foreclosure proceeding is based on the contract. His second cause of action was on *quantum meruit*. A request for a third cause of action for rescission of the express contract was denied. In sum, there is no evidence to show that the contract is out. In fact all the evidence shows that it was the basis for all operations and negotiations from start to finish. It follows that the Referee could not ignore the contract provisions respecting the sum due and owing from the owners to the general contractor. It must be used as the basis in calculating the award after due consideration of the extras and the faulty work and omissions.

In *Abinet* v. *Mediavilla* (5 A D 2d 679.) in an action to foreclose a mechanic's lien it was held that no contract will be implied in law as a basis for *quantum meruit* where an express and enforcible contract exists between the parties. Recovery on *quantum meruit* could be had only if the contractor shows the contract repudiated, abandoned or waived by the other party. And in *Hickman* v. *Leary* (225 App. Div. 733) a judgment on *quantum meruit* was reversed where an express contract was found. It was stated there that as to any items not covered by the contracts, which should prove to be extras explicitly ordered outside of the scope of the contract, a recovery might be had on the basis of *quantum meruit*. This is the same principle enunciated in *Keahon Bros.* v. *Blank* (161 Misc. 874) where it was held that when the owner knowingly receives and accepts

the benefits of extra work orally directed by himself and his agents, the owner is equitably bound to pay the reasonable value thereof, notwithstanding the provisions of his contract that any extra work must be supported by a written authorization signed by the owner, such conduct working a waiver of that requirement.

The plaintiffs contend that irrespective of the existence of an express contract, and irrespective of whether the performance rendered was substantial or not, plaintiffs are entitled to bring an action to recover for the reasonable value of the services rendered at the owners' request. Of course, if this were possible any contractor who had made a poor contract could ignore it and recover in *quantum meruit*. Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*. This is not to say that the second cause of action for *quantum meruit* should not have been pleaded. If, in fact, it had been proven on the trial that the contract had indeed been abrogated and a finding so made, then the Referee would have been fully justified in proceeding with proof as to the reasonable value of the services rendered and making an award commensurate therewith upon such evidence, pursuant to the pleadings. Since that was not the case, however, the proper method would be to use the contract price as a base, obtain the difference between extras and omissions and faulty work, and then add or subtract the result to or from the contract price, whatever the case might be.

Nowhere did the Referee account for faulty work or omissions on Servidone's part. The experts, upon whose opinion the award is based, went out and inspected the motel after it was in full operation — many months after Servidone left the job. There is no indication that they made any allowances for the cost of getting the building in shape for occupancy, correcting defects and omissions, etc. They simply said, "Here is a motel worth $234,500.00", and that was it. The owners seem to have a substantial claim that there was much wrong with the work accomplished by Servidone, as witness the testimony of Harris Sanders, the owners' representative on the arbitration team and the report submitted by the arbitrators which is also in evidence. The owners' argument that this arbitration report is a bar as *res judicata* is untenable since the award was never pleaded as such and the request to amend so as to include it came late enough in the trial that the Referee was justified in denying it, but it certainly represents evidence which was admitted and should have been considered by the Referee.

The judgment must be modified because. the Referee could not base the entire award on *quantum meruit* in the face of the existing express contract. He was also in error in accepting the expert's valuation of the construction cost of the motel without considering all the other features of the case. It was stipulated that the subcontractors and materialmen's bills total $122,988.23 although, of course, owners do not admit that they have any liability therefor.

The proof that the motel was definitely larger and that Backer, one of the owners, was constantly on the job, persisting in making changes must be kept in sharp focus.

We find the contract price of $130,000 binding on the parties. We accept as adequately proven in the record, the finding of the arbitrators that there were extras beyond the contract price, furnished by the contractor of $18,792 bringing the total sum for which the owners were responsible to $148,792. The arbitrators, however, considered that $42,544 should be deducted as omitted by the contractor from the work he had agreed to perform. While these specific omissions are perhaps, sustained by the record, we are of the opinion that they are more than fully offset by the total product of the contractor's work. We think, on fair balance, there were no substantial omissions because everything agreed to be done, its equivalent or more than its equivalent was put in the job. We therefore find that after the payment of $84,142 there remains due on the contract price of $130,000 plus $18,792 for extras, or $148,792, the sum of $64,650.

Therefore the judgment and order should be modified on the law and facts by reducing the balance due under the contract to the sum of $64,650 and as so modified affirmed, without costs.

BERGAN, P. J., COON and GIBSON, JJ., concur; HERLIHY, J., taking no part.

Judgment modified, on the law and facts, by reducing the balance due under the contract to the sum of $64,650 and as so modified affirmed, without costs. Settle order.