**CRANE CO., a Delaware Corporation, Plaintiff–Appellant,**

v.

**COLTEC INDUSTRIES, INC. and The B.F. Goodrich Company, Defendants–Appellees.**

**No. 1914, Docket 99–7098.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1999.

Decided March 3, 1999.

Opinion filed March 29, 1999.

Michael L. Hirschfeld, New York, N.Y. (Andrew E. Tomback, Mitchell Epner, Milbank, Tweed, Hadley & McCloy LLP, on the brief), for Plaintiff–Appellant.

Rory O. Millson, New York, N.Y. (Cravath, Swaine & Moore, on the brief), for Defendant–Appellee Coltec Industries Inc.

Robert B. Mazur, New York, N.Y. (Wachtell, Lipton, Rosen & Katz, on the brief), for Defendant–Appellee The B.F. Goodrich Company.

Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND, District Judge.*

JACOBS, Circuit Judge:

In anticipation of possible merger negotiations, plaintiff-appellant Crane Co. and defendant-appellee Coltec Industries, Inc. entered into a confidentiality agreement prohibiting each party from participating in certain types of uninvited initiatives related to corporate control of the other, and requiring each to notify the other if approached by a third party interested in undertaking those same initiatives. Crane's complaint alleges that Coltec violated the agreement by engaging in (ultimately successful) merger negotiations with defendant-appellee The B.F. Goodrich Company without first notifying Crane. Because the Goodrich–Coltec merger terms include a $50 million break-up fee and a stock lock-up option, Crane seeks relief that would restore all parties to a supposed status quo ante by enjoining the operation of these defensive measures so

---

* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York, sitting by designation.

that Crane can make a competing "best bid" for Crane.

Crane also claims that Coltec breached a second agreement by allowing its financial advisor to advise Goodrich during the Goodrich–Coltec merger negotiations.

Crane appeals from the January 25, 1999 judgment of the United States District Court for the Southern District of New York (Jones, *J.*) dismissing Crane's lawsuit against Coltec and Goodrich pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.

## BACKGROUND

We accept Crane's well-pleaded factual allegations as true for purposes of this appeal. *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1197 (2d Cir.1996). On October 31, 1995, Crane and Coltec entered into an agreement (the "Confidentiality Agreement"), wherein they agreed, *inter alia,* to make mutual disclosure of nonpublic business information in furtherance of their consideration of a possible negotiated transaction between them, and to hold that information "strictly confidential" and "solely for the purpose of determining the desirability of a Transaction" between Coltec and Crane.

Paragraph nine of the Confidentiality Agreement contains a "Standstill Provision" in which the parties agreed to abstain from undertaking or abetting unsolicited initiatives vis-à-vis each other, and to give notice to the other if either was approached by anyone concerning specified types of initiatives bearing on corporate control. The text of that Standstill Provision—edited, emphasized and reformatted—is set out below:

> ... *[U]nless specifically requested* in writing in advance by the Board of Directors of one of the parties hereto (the *"Subject Company"*), neither the other party hereto nor any of its affiliates ... will, and such party and its affiliates will not assist or encourage others (including by providing financing) to, directly or

indirectly, for a period of three years from the date of this agreement

> (i) acquire or agree, offer, seek or propose (whether publicly or otherwise) to acquire ownership (including but not limited to beneficial ownership ... ) of (x) the Subject Company or any of its assets or businesses, (y) any securities issued by the Subject Company or (z) any rights or options to acquire such ownership (including from a third party), whether by means of a negotiated purchase of securities or assets, tender or exchange offer, merger or other business combination, recapitalization, restructuring or other extraordinary transaction (a *"Business Combination Transaction"*),

> (ii) engage in any "solicitation" of "proxies" ..., or form, join or in any way participate in a "group" ..., with respect to any securities issued by the Subject Company,

> (iii) otherwise seek or propose to influence or control the Board of Directors, management or policies of the Subject Company,

> (iv) take any action that could reasonably be expected to force the Subject Company to make a public announcement regarding any of the types of matters referred to in clause (i), (ii) or (iii) above, or

> (v) enter into any discussions, negotiations, agreements, arrangements or understandings with any third party with respect to any of the foregoing.

Each party hereto also agrees during such period not to request the other party or any of its Representatives to amend or waive any provision of this paragraph (including this sentence). *If at any time during such period either party hereto is approached by any third party concerning its or their participation in any of the types of matters referred to in clause (i),*

*(ii) or (iii) above, such party will promptly inform the other party of the nature of such contact and the parties thereto.*

(Second and third emphases in original.) The final sentence of the Standstill Provision is referenced herein as the "Notice Provision."

On November 9, 1995, the parties and their respective financial advisors—Dillon Read & Co., Inc. for Crane, and Morgan Stanley & Co., Inc. for Coltec—entered into an "Advisor Agreement" binding the financial advisors to the terms of the Confidentiality Agreement. The relevant text of the Advisor Agreement, with emphasis added, provides that

> As a condition to the furnishing of the requested information, Crane and Coltec each requires that the other's Advisor independently *agree that it will be bound by the terms of the Confidentiality [Agreement], in the same manner and to the same extent as the party for whom it is acting as Advisor* (Crane in the case of Dillon Read and Coltec in the case of Morgan Stanley), *as though each Advisor were an original signatory to the Confidentiality [Agreement];* provided that nothing contained herein shall restrict either Advisor from engaging in routine trading activities in the securities of Crane or Coltec on behalf of themselves or their clients. In addition, each of Crane and Coltec requires that each Advisor *also agree not to provide advice to any party with respect to any of the types of matters referred to in [the Standstill Provision] for the period set forth therein.*

The Confidentiality Agreement constituted neither an agreement to merge the two companies, nor a commitment to reach such an agreement. Crane and Coltec engaged in some merger-related talks between October 31, 1995 and October 31, 1998, but nothing came of them, and the Standstill Provision of the Confidentiality Agreement terminated by its terms on October 31, 1998.

In October 1998—at the tail end of the Standstill Provision's effective period—Goodrich approached Coltec to express interest in a merger of the two companies. Coltec did not report this contact to Crane. Coltec and Goodrich then entered into merger discussions, in which Morgan Stanley acted as financial advisor to Goodrich.

On November 23, 1998—after expiration of the Standstill Provision's effective period—Coltec and Goodrich announced that they had signed a merger agreement under which Goodrich would acquire Coltec. This agreement contains provisions designed to insulate the merger from competing bids for Coltec, including a $50 million break-up fee that Coltec would have to pay to Goodrich if Coltec were to withdraw from the agreement and a lock-up option allowing Goodrich to purchase 19.9% of Coltec's stock at a fixed price of $20.125 per share (which if exercised would prevent other suitors from using the pooling of interests accounting method to structure a potential merger with Coltec). Crane alleges that these measures effectively prevent it from making a competing bid for Coltec.

Crane promptly filed this lawsuit against Coltec and Goodrich, alleging that Coltec breached (i) the Standstill Agreement's Notice Provision by failing to notify Crane when Goodrich initially made contact, and (ii) its obligations under the Advisor Agreement when its advisor, Morgan Stanley, served as financial advisor to Goodrich. Crane argues that one purpose of the Standstill Agreement was to afford it an opportunity—when notified of a competing suitor—to make its "best bid," and that Coltec's breaches denied Crane the ability to make that bid. Because the defensive measures in the Goodrich–Coltec merger agreement now effectively prevent Crane from consummating a merger with Coltec, Crane seeks by way of remedy a court order enjoining application of those defensive measures as against Crane,

thereby giving Crane an opportunity to make a competing offer for Coltec.[1]

The district court rejected Crane's claims on the grounds that (i) the Confidentiality Agreement created no obligation for Coltec to notify Crane of any third-party interest in Coltec, and (ii) the Advisor Agreement did not prevent Morgan Stanley from serving as advisor to Goodrich in any discussions related to a merger with Coltec. Accordingly, the district court dismissed Crane's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

We expedited review of this appeal by order dated January 29, 1999. After oral argument on March 3, 1999, we affirmed the judgment of the district court from the bench and ordered the mandate to issue immediately, indicating that this opinion would follow.

## DISCUSSION

 We review the district court's Rule 12(b)(6) dismissal *de novo*, drawing all inferences in favor of Crane. *See Bybyk*, 81 F.3d at 1197. Because the Confidentiality Agreement specifies the choice of New York law, we follow the common law rule utilized in that state that, "[i]n interpreting a contract, the intent of the parties governs." *American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990); *see also Bybyk*, 81 F.3d at 1199. For purposes of this appeal, we ascertain this intent "from the plain meaning of the language employed" in the agreements, rather than from extrinsic evidence. *Tigue v. Commercial Life Ins. Co.*, 219 A.D.2d 820, 821, 631 N.Y.S.2d 974, 975 (4th Dep't 1995). If the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then "interpretation is a matter of law," and Crane's claims may be resolved by summary judgment or Rule 12(b)(6) dismissal. *See Bybyk*, 81 F.3d at

1199 (quoting *American Express Bank*, 164 A.D.2d at 277, 562 N.Y.S.2d at 614) (internal quotation mark omitted).

We analyze each of the agreements in turn.

### The Confidentiality Agreement

Crane's argument hinges on the final sentence of the Standstill Provision—the Notice Provision—which requires the parties to notify each other if either is "approached by any third party concerning its or their participation in any of the types of matters referred to in clause (i), (ii) or (iii)." As the district court observed, this case "centers on what, precisely, are 'the types of matters referred to in clause (i), (ii) or (iii)' in the [Notice Provision] that give rise to the obligation to notify the other company."

Crane argues that the Notice Provision required Coltec to notify it of any contact with a third party interested in acquiring Crane *or Coltec* (and therefore bound Coltec to give Crane notice of Coltec's contact with Goodrich). The district court rejected that reading and ruled that the Notice Provision unambiguously required Coltec to notify Crane only if the third party expressed interest in an uninvited initiative targeted at *Crane:*

> I therefore conclude that the "types of matters referred to in clause[s] (i), (ii), [and] (iii)" of the Standstill Provision[ ] must be uninvited attempts to acquire the Subject Company, to acquire its stock, or to solicit the proxies of its shareholders, and that the party to whom notice is owed is the Subject Company, not "the other Company". Thus, Crane must only inform Coltec if Crane becomes aware that a third party is interested in acquiring Coltec, and Coltec must only notify Crane if Coltec becomes aware that a third

1. The defendants-appellees argue that the remedy sought does not fit the injury claimed. The district court elected not to resolve this issue, finding instead that "the obligations

allegedly breached do not exist." Because we agree with the district court, we do not reach this question either.

party is interested in acquiring Crane.

(Third alteration added.) Therefore, the district court concluded, the Standstill Provision did not require Coltec to notify Crane, because Goodrich's interest was in a merger with Coltec.

We affirm on two narrower, independent grounds.

■ First, the clauses numbered (i), (ii), and (iii) in the Standstill Provision list kinds of transactions taken in respect to a "Subject Company." Generally, they are:

(i) acquisition of the Subject Company;

(ii) solicitation of proxies in the Subject Company's securities; and

(iii) attempts to influence the Subject Company's Board of Directors.

The term "Subject Company" is explicated in the wording that is preamble to numbered clauses (i), (ii), and (iii): "[U]nless specifically requested in writing in advance by the Board of Directors of one of the parties hereto (the 'Subject Company'), ... the other party hereto ... will [not do], [or] assist or encourage others" to do any of the things listed in clause (i), (ii), or (iii). Thus, the "types of matters referred to in clause[s] (i), (ii), [and] (iii)" are transactions potentially bearing on corporate control that are uninvited by the company

(the Subject Company) whose ownership, securities, stockholder proxy rights or board of directors is the subject of the transaction—in this case, Coltec.[2] Accordingly, the Notice Provision does not require either party to advise the other of welcome advances or an invited proposal from a third party. Crane does not allege that Goodrich's proposal was unwelcome to or uninvited by Coltec. Therefore, we conclude that Coltec was not required to notify Crane of its contact with Goodrich.[3]

■ Second, the whole thrust of Crane's lawsuit and its reading of the Standstill Provision is that the agreement confers on Crane a right—once it has knowledge of a competing offer—to make its best bid for Coltec. However, this claim of right is foreclosed by the eleventh full paragraph of the Confidentiality Agreement, which states that Crane has no "rights or obligations of any kind whatsoever with respect to a Transaction by virtue of this agreement ... *other than for the matters specifically agreed to herein*." (Emphasis added.)[4] The Confidentiality Agreement contains no specific agreement conferring on Crane a *right* to make an offer for Coltec. To the contrary, the Standstill Provision emphatically negatives such a right: the parties agreed *not* to make an offer for the other without a written request from the Subject Company's board of directors, and further agreed to seek no

---

**2.** A reading of clause (iv) of the Standstill Provision supports this conclusion. That clause prohibits the "other party" from taking any action that could reasonably be expected to *force* the Subject Company to make a public announcement regarding any of the types of matters referred to in clause (i), (ii) or (iii)[.]

(Emphasis added.) This clause only makes sense in the context—supplied by the preamble—of preventing *uninvited* takeover activities; otherwise, it would prevent either party from initiating an *invited* takeover, as that would cause the other party to make a public announcement relating to that takeover.

**3.** We do not rule on the district court's conclusion that the Notice Provision required Coltec to notify Crane only "if Coltec becomes aware that a third party is interested in acquiring Crane." The fact that Goodrich's

merger proposal was not uninvited or unwelcome is sufficient to decide this case.

**4.** This paragraph reads in full:

It is expressly understood by the parties hereto that this agreement is not intended to, and does not, constitute an agreement to consummate a Transaction or to enter into a definitive Transaction agreement, and neither Crane nor Coltec will have any rights or obligations of any kind whatsoever with respect to a Transaction by virtue of this agreement or any other written or oral expression by either party or its respective Representatives unless and until a definitive agreement relating thereto is executed and delivered, other than for the matters specifically agreed to herein.

waiver or amendment of that prohibition.[5] Thus, the only right that Crane seeks to vindicate in this action does not exist.

*The Advisor Agreement*

 The Advisor Agreement bound Morgan Stanley, Coltec's financial advisor, to the terms of the Confidentiality Agreement. Further, Morgan Stanley agreed "not to provide advice to any party with respect to any of the types of matters referred to in" the Standstill Provision. Crane argues that Morgan Stanley (a nonparty to this litigation) violated the Advisor Agreement by advising Goodrich during the Goodrich–Coltec merger negotiations and that Coltec breached the Advisor Agreement by allowing Morgan Stanley to do so.

However, the duties of Morgan Stanley are defined in terms of the duties owed by Coltec, the party Morgan Stanley was advising, under the Confidentiality Agreement; Crane required that Morgan Stanley "independently agree that it [would] be bound by the terms of the Confidentiality [Agreement], in the same manner and to the same extent as [Coltec], as though [Morgan Stanley] were an original signatory to the Confidentiality [Agreement]." Thus, our reading of the Confidentiality Agreement defeats this argument as well. Because the Goodrich–Coltec merger negotiations themselves fall outside the ambit of the Standstill Provision, so does Morgan Stanley's advice to Goodrich in connection with those negotiations. Neither Morgan Stanley nor Coltec was in breach of the Advisor Agreement.

## CONCLUSION

The district court correctly concluded that neither agreement was breached. Accordingly, we affirm the judgment of the district court dismissing this action.

5. Perhaps under certain circumstances a board of directors might be legally obliged to consider such an offer, but that can hardly be the specific import of this provision.