[788 NYS2d 15]

Michael Katz, Appellant, v American Mayflower Life Insurance Company of New York, Respondent.

First Department, December 28, 2004

### APPEARANCES OF COUNSEL

*Wechsler Harwood LLP*, New York City (*William R. Weinstein* and *Robert I. Harwood* of counsel), for appellant.

*Sonnenschein Nath & Rosenthal, LLP*, New York City (*Reid L. Ashinoff, Sandra D. Hauser* and *Michael S. Gugig* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

On or about July 11, 1997, plaintiff, a real estate attorney, signed an application for a $1 million term life insurance policy, premiums to be paid on a quarterly basis, with defendant American Mayflower Life Insurance Company of New York. As plaintiff must concede, the application, which is explicitly made part and parcel of the policy, expressly provides that coverage would commence when the policy is delivered and his initial premium paid by stating immediately above the signature line:

> "[E]xcept as provided in the Conditional Receipt, if issued, with the same number as this application, no insurance will take effect unless: (a) the policy is delivered to the Owner; (b) the first modal premium is paid; and (c) there has been no change since the date of this application in the insurability of all persons proposed for insurance or in any of the answers to the questions on this application."

Plaintiff had two payment options for the purchase of his life insurance policy: to pay the initial premium due upon delivery of the policy, the so-called "C.O.D." payment option, or to pay the initial premium due with the submission of his application and receive temporary coverage under a conditional receipt. Plaintiff chose the C.O.D. payment option and now alleges that as a result of choosing to pay upon delivery of the policy, American Mayflower charged him a premium for a period of time before he was covered. It is undisputed that although plaintiff's policy had a "Policy Date" and "Date of Issue" of September 2, 1997, coverage did not become effective until on or about September 24, 1997.

The policy specifically informed plaintiff when subsequent premiums would become due and owing. The "Policy Date" section of the policy states, in relevant part:

"Policy Date: Policy anniversaries, policy years, policy months, and Premium Due Dates are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year."

Thus, the policy explicitly provided that the due date for premiums after the first is determined solely by reference to the policy date set forth in the policy, not the date of policy delivery or first premium payment. Since plaintiff chose to pay his premiums on a quarterly basis, the policy also sets forth the due dates for subsequent quarterly premium payments, which dates are based on the policy's September 2, 1997 policy date.

The policy's cover page also advised plaintiff that he was not compelled to keep the policy after it was delivered; it expressly provided a 20-day "free look" period during which he could have returned the policy for any or no reason at all and received a full refund of premiums paid:

"The Owner may return this Policy within 20 days after its delivery by taking it or mailing it to the Company or to any agent of the Company. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned."

Plaintiff elected to keep the policy and paid premiums for more than four years before commencing this putative class action in Supreme Court, asserting claims of breach of contract and unjust enrichment. The essence of the complaint is that defendant breached the life insurance policy by failing to provide a year's worth of coverage in exchange for an "annual premium." Thus, his entire claim is essentially that American Mayflower set different dates for the commencement of coverage and the premium due dates.

American Mayflower moved, pre-answer, to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). While the motion was sub judice, a motion to dismiss a virtually identical case, *Franco v Guardian Life Ins. Co. of Am.* (2003 NY Slip Op 50024[U] [Sup Ct, NY County, Jan. 28, 2003, Cahn, J., Index No. 604302/2001]), was granted. In the instant matter, the motion court found that the issues were substantially similar to those raised in *Franco* and dismissed the complaint "for the reasons set forth in [*Franco*]." After examining the policy

language, the *Franco* court held, "[T]he language of the policy, including the application, which is incorporated therein, is not ambiguous, since the various payment options are described in detail." (*Franco* at *6.) The court further held that, in the context of the policy, the phrase "annual," as used in conjunction with premium, "describes the length of time between premium payments." (*Id.*) The court in *Franco* dismissed the unjust enrichment claim because "the parties' rights and liabilities are governed by the terms of an express contract." (*Id.* at *7.)

Plaintiff's breach of contract claim fails. The first year period of coverage is determined by the policyholder's choice to pay upon application or to pay upon delivery of the policy. Plaintiff's American Mayflower life insurance application, expressly made part of the policy, plainly states that coverage will not become effective unless "the policy is delivered to the Owner [and] the first modal premium is paid." It is undisputed that coverage has continued since delivery of the policy and payment of the first premium. Nothing in the application or the policy ultimately delivered stated or suggested that, having chosen the C.O.D. payment option, plaintiff would have coverage between the policy date and the delivery and payment date. Thus, since plaintiff is receiving all of the policy benefits he purchased, Supreme Court properly dismissed his breach of contract claim. While the dissent accords great weight to the fact that the policyholder would not be aware until after the policy was delivered that American Mayflower was affording less than one year's coverage for the first annual premium, the "free look" period entitling the policyholder to a full refund of any premium paid renders this fact insignificant. Plaintiff has not, and cannot, identify any contractual provision that has been breached.

That, due to plaintiff's selection of the C.O.D. payment option, American Mayflower set different dates for the commencement of coverage and the premium due dates does not constitute a breach of contract since they are, as plaintiff concedes, part of the contract. Thus, any claim that plaintiff paid a premium for a period of time before coverage commenced is contradicted by the express terms of the contract.

The argument that plaintiff did not appreciate that the first premium would purchase less than 365 days of coverage necessarily fails as a matter of law. It is a well-settled principle of law in this state that an insured has an obligation to read his or her policy and is presumed to have consented to its terms (*Minsker*

*v John Hancock Mut. Life Ins. Co.*, 254 NY 333, 338 [1930]; *Ciaramella v State Farm Ins. Co.*, 273 AD2d 831, 832 [2000]; *British W. Indies Guar. Trust Co., Ltd. v Banque Internationale A Luxembourg*, 172 AD2d 234 [1991]). Recognizing the clear language of his application and the policy, and the import of recent directly applicable New York appellate decisions, *Dougherty v William Penn Life Ins. Co. of N.Y.* (3 AD3d 469 [2d Dept 2004], *lv denied* 2 NY3d 704 [2004]) and *Randazzo v Gerber Life Ins. Co.* (3 AD3d 485 [2d Dept 2004], *lv denied* 2 NY3d 704 [2004]), decided together, which rejected the same argument as is made here, holding that "the policy clearly states when coverage is to begin and when premiums are due" (*id.* at 486), plaintiff has departed from the allegations of his complaint and now hinges his breach of contract claim on a purported ambiguity between the clear contract provision governing the commencement of coverage and the policy's use of the term "annual premium." This is the position the dissent advances.

The argument is without merit. Plaintiff's claim of ambiguity is belied by the policy's clear distinction between the "initial premium," which, when paid, triggers coverage in the first instance, and "subsequent current annual and maximum annual premiums," that, according to the policy, are due on September 2 of each following year, the anniversary of the "Policy Date" of September 2, 1997. Specifically, the policy clearly and unambiguously provides that the quarterly "Total Initial Premium" is $447.20, that coverage does not commence until payment of the total initial premium, that, given plaintiff's election to pay the annual premium on a quarterly basis, premiums were due on the 2nd of March, June, September and December and that due dates for subsequent quarterly premium payments were determined by reference to the "Policy Date"— September 2, 1997, not the date of delivery of the policy. Significantly, the policy's general provisions explicitly provide, "Policy anniversaries, policy years, policy months and Premium Due Dates are measured from the Policy Date."

Plaintiff paid his premium upon the policy's delivery. As he expressly agreed, coverage did not commence until the policy was delivered and the quarterly initial premium paid. The policy clearly described when all subsequent quarterly premium payments were due, including the due date, December 2, 1997, of his next quarterly premium. While it is true that plaintiff's initial premium payment did not provide him with a full calendar quarter of coverage because he made that initial

premium payment after the policy date, this fact was clearly disclosed in the policy application, which, as noted, is expressly incorporated into the policy.

The suggestion that the reasonable policyholder who purchases a life insurance policy, C.O.D., expects that payment of the first premium would provide a year's worth of coverage, or in plaintiff's case, a quarter of a year's coverage since he was paying the annual premium on a quarterly basis, is contradicted by the unambiguous terms of the policy. Each policyholder is afforded the option of receiving a full year of coverage, or, as here, a quarter of a year's coverage for the initial premium payment if he or she chooses to pay upon application, or pay upon delivery and acceptance of the policy and receive coverage from the later date of delivery and payment. If the policyholder chooses to pay upon application, there is no delay in coverage. If the choice is to pay upon delivery, coverage commences upon payment. In either case, the policyholder will pay the same initial premium.

Moreover, plaintiff has never claimed that he was actually confused and that he expected to be covered for any period prior to his payment of the initial premium. As an attorney, he would be hard pressed to assert such a claim. Nor does he claim, much less suggest, how he might prove that he has not received or will not receive all the benefits for which he has paid. Even were the policyholder a layperson, not, as is plaintiff, a lawyer, there is no justification for engaging, as does the dissent, in a contra proferentem analysis of how the average person would construe the policy language. Where, as here, the policy's terms are clear and unambiguous, the court should enforce its plain meaning and may not consider extrinsic evidence of the parties' understanding or intent (see *Chimart Assoc. v Paul*, 66 NY2d 570 [1986]; *Crane Co. v Coltec Indus., Inc.*, 171 F3d 733, 737 [2d Cir 1999]).

As noted, the Second Department has affirmed dismissals pursuant to CPLR 3211 of identical breach of contract claims in *Dougherty v William Penn Life Ins. Co. (supra)* and *Randazzo v Gerber Life Ins. Co. (supra)*, and, more recently, in *Topel v Reliastar Life Ins. Co.* (6 AD3d 608 [2004]), it reversed the denial of a CPLR 3211 motion to dismiss a complaint making allegations virtually identical to those made herein. We cannot discern any difference between the facts here and those in *Dougherty*, *Randazzo* and *Topel*. Nor can plaintiff distinguish the dismissal of another virtually identical breach of contract claim in *Miller v The Equitable Life Assur. Socy. of the United States* (US Dist

Ct, SD NY, Rakoff, J., 02 Civ 5362 [2002]), holding that there was no "material ambiguity" in the policy at issue, and that "the only reasonable objective reading of the plain language of the policy" informed the plaintiff that upon payment of his initial premium coverage would be provided until the next "register date," i.e., policy date. The decision in *Miller* is also in accord with several cases involving the same issue decided pursuant to the laws of other states (*see e.g. Hawa v Metropolitan Life Ins. Co.*, 2004 WL 231020, 2004 Tex App LEXIS 1179 [Tex Ct App, Feb. 6, 2004, No. 07-03-0068-CV] [affirming the grant of the insurer's motion for summary judgment and holding that the insured agreed to pay the same premium for the first year of coverage as for successive years even though coverage did not commence until 11 days after the policy date, the date on which the first premium was due]; *Bogard v Inter-State Assur. Co.*, 263 Ga App 767, 770, 589 SE2d 317, 319 [2003] [affirming dismissal of breach of contract claim because "the policy terms are unambiguous and (the plaintiff) agreed to be bound by them"]; *Johnson v First Penn-Pacific Life Ins. Co.*, case No. 02 CV 6638 [Colo Dist Ct 2003] [dismissal on the pleadings of breach of contract claim]).

Nor does *Semler v First Colony Life Ins. Co.* (case No. 984902 [Cal Super Ct 1999]) support plaintiff's claims. That decision is based on a directly applicable California statute, California Insurance Code § 480, which prohibits insurance companies doing business in California "from collecting a premium for the period before coverage commences." (*Id.*) New York has no statute or regulation remotely similar to this particular statute (*see also Rubin v Indianapolis Life Ins. Co.*, case No. 02 CH 003376 2002 [Ill Cir Ct] [grant of motion dismissing breach of contract claim, court holding that, unlike California, Illinois did not prohibit the charging of "gap premiums"]).

As the dissent concedes, there is no merit to plaintiff's unjust enrichment claim. New York law is clear and well settled:

> "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382,

388 [1987] [citations omitted]; *see Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 89 [1993], *affd* 84 NY2d 430 [1994].)

Plaintiff alleges the existence of a valid, enforceable contract, which, by its very terms, addresses whether coverage would be provided during the period of time between the signing of the application and the delivery of and payment of the policy. Under such circumstances, plaintiff's unjust enrichment claim cannot survive (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d at 388-389).

We have examined plaintiff's other arguments and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered January 30, 2003, which granted defendant's motion to dismiss the complaint, should be affirmed, without costs or disbursements.

Tom, J. (dissenting). The issue raised on this appeal is simply stated: What period of life insurance coverage is an insurer required to provide in return for the payment of an "annual" premium? On its face, the question appears no more challenging than, "Who is buried in Grant's Tomb?" or, "How many pounds are there in a hundredweight?" Its apparent triviality notwithstanding, the answer for plaintiff insured, Michael Katz, was a not-so-obvious 343 days.

On July 11, 1997, plaintiff submitted an application to defendant American Mayflower Life Insurance Company for term life insurance coverage in the amount of $1 million. The company offers the applicant two payment options: Pay the premium upon submission of the application or pay upon delivery of the policy. If the applicant chooses to pay immediately, American Mayflower provides temporary insurance coverage pursuant to a "Conditional Receipt." If the consumer chooses the second option and pays the first premium after his application has been accepted by American Mayflower and the policy delivered, no coverage is provided until the first premium is paid.

The application provides:

"(1) the entire contract will consist of this application and the policy issued in response to it; . . .

"(3) except as provided in the Conditional Receipt, if issued, with the same number as this application, no insurance will take effect unless: (a) the policy is

delivered to the Owner; (b) the first modal premium is paid; and (c) there has been no change since the date of this application in the insurability of all persons proposed for insurance or in any of the answers to the questions on this application."

Plaintiff did not purchase the preliminary insurance coverage provided by the conditional receipt—or "binder," as it is commonly known (*see Springer v Allstate Life Ins. Co.*, 94 NY2d 645, 649-650 [2000]).

On September 2, 1997, American Mayflower issued a policy to plaintiff with a policy date of September 2, 1997. The policy was delivered to plaintiff on September 24, 1997, at which time, he paid the first "annual" premium and coverage became effective.

The policy states that plaintiff will be charged $1,720 as an "annual premium" for the initial premium period of 10 years. The table of premiums delineates the beginning of each policy year as September 2, including the initial year. A general provision in the policy, entitled "Policy Date," provides, "Policy anniversaries, policy years, policy months and Premium Due Dates are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter." The schedule indicates that the "Policy Date" is identical to the date of issue, September 2, 1997.

Plaintiff commenced this putative class action seeking to recover "compensatory and/or actual damages" or, in the alternative, "disgorgement and/or restitution," on behalf of himself and other, similarly situated policyholders. The substance of the complaint, which asserts causes of action for breach of contract and unjust enrichment, is that while plaintiff paid a full annual premium at the time the policy was delivered, the insurer failed to provide a full year of life insurance coverage during the first policy year. That is, although coverage was not effective until the delivery date (September 24), the annual premium was applied to the period beginning with the policy date (September 2). Thus, plaintiff was charged a premium for 22 days for which he received no coverage. The complaint alleges that "[t]his practice is not disclosed in defendant's policies and applications" and that the insurer "unilaterally controls how long it takes between the time a policy is approved and the time the policy is issued and actually sent to its agent for delivery to and acceptance by the owner." The complaint charges that "American Mayflower's unlawful practices permit it to obtain money

wrongfully from unsuspecting consumers." It adds, "Plaintiff, and thousands of deceived consumers like him, reasonably believed American Mayflower would only charge premiums for periods of time for which it was under a reciprocal obligation to pay death benefits under the policy."

Defendant responded by bringing this pre-answer motion to dismiss the complaint based upon the documentary evidence, specifically, its life insurance policy, and for failure to state a cause of action (CPLR 3211 [a] [1], [7]). Defendant argued that it cannot be held in breach of the insurance contract because it provided precisely the life insurance coverage specified in its policy. It noted that the life insurance contract contains a schedule that "shows the policy years during which premiums are payable." The "table of premiums" lists the "Current Annual Premium" for each "Policy Yr Beginning SEPTEMBER 2." Read together with the sections entitled "Policy Date" and "Premium Provisions," the application and the printed policy establish that the initial "year" of coverage runs from the date coverage became effective (the delivery date of September 24th) to the next anniversary of the policy date (September 2nd). Since this is understandable from reading the policy, defendant contended, it performed in accordance with the contract of insurance. Furthermore, defendant noted that the contract gives the insured 20 days during which he could return the policy for a full refund. Finally, the insurer argued that plaintiff's retention of the policy constitutes acceptance and his continued payment of premiums reflects his ratification of its terms.

In opposition to the motion, plaintiff noted that while he does not dispute defendant's right to commence coverage upon delivery and payment, he received less than a year of coverage for his initial "annual" premium payment. Contrary to the position taken by defendant, plaintiff argued that the insurer's peculiar use of the term is misleading and inconsistent with its common meaning, thereby creating an ambiguity that the courts are required to resolve against the insurer. Therefore, he asserted his entitlement to a refund for the period of time preceding delivery of the policy, during which no life insurance coverage was provided.

Supreme Court granted defendant's motion and dismissed the complaint, holding that this matter is governed by its previous decision in *Franco v Guardian Life Ins. Co. of Am.* (2003 NY Slip Op 50024[U] [Sup Ct, NY County, Jan. 28, 2003, Cahn, J., Index No. 604302/2001], *affd* 13 AD3d 292 [2004]). In that case,

the court held that the word "annual," when read "in the context of the application and policy in their entirety," does not mean that "the premium will afford insurance [coverage] for twelve full months" but "clearly describes the length of time between premium payments." (*Id.* at *6-7.) The court therefore dismissed plaintiffs' first cause of action for breach of contract. The court dismissed the third cause of action for unjust enrichment on the ground that this matter is governed by the terms of an express contract.

On appeal, plaintiff argues that the term "annual" is ambiguous, and that any ambiguity in an insurance policy must be resolved in favor of the insured. Plaintiff contends that the use of the term "annual" is internally inconsistent with the provision "no insurance effective until delivery." He asserts that further ambiguity arises from the use of the term "annual premium" to refer to periods of coverage of dissimilar duration. Defendant responds that its policy is clear and unambiguous, that it performed in accordance with the policy provisions and that plaintiff both accepted the policy and ratified its terms.

Because of the obvious disparity in bargaining power between the insured and the insurance company, defendant's contentions concerning acceptance and ratification are uncompelling. The subject policy provides a 20-day examination period.[1] However, the only available alternatives are to either accept coverage on the terms extended by the insurer or to return the policy and forgo any coverage at all. In addition, life insurance obtained from a competitor may well impose the same conditions precedent to the effectiveness of coverage, as the *Franco* case aptly illustrates. In this regard, the life insurance policy is a classic example of a contract of adhesion (*see Henningsen v Bloomfield Motors, Inc.*, 32 NJ 358, 161 A2d 69 [1960]).

Because the insured generally lacks the power to bargain for more favorable contract terms, the insurer is subject to the doctrine of contra proferentem (*see Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327 [1996]). Therefore, to obtain a construction of its policy favorable to its interests, an insurer is required to demonstrate that the interpretation sought to be accorded to the terms of the insurance contract "is the only construction which may fairly be placed on them" (*Lachs v Fi-*

---

1. A statutory period of at least 30 days is now provided during which the insured may examine the policy and elect to cancel (Insurance Law § 3209 [b] [1]), effective January 1, 1998 for individual life insurance policies (Insurance Law § 3209 [n] [1]).

*delity & Cas. Co.*, 306 NY 357, 365 [1954]; *see Bronx Sav. Bank v Weigandt*, 1 NY2d 545, 551 [1956]).

The provisions of an insurance policy are normally construed "by giving the words their plain meaning" (*United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 233 [1986]), but this is only feasible "if they are clear and unambiguous" (*Hartol Prods. Corp. v Prudential Ins. Co.*, 290 NY 44, 47 [1943]). While courts often look to the dictionary to determine the ordinary meaning of a disputed term (*see Mazzola v County of Suffolk*, 143 AD2d 734, 735 [1988]), that course is unavailing because the word "annual" is itself the source of ambiguity. As pertinent to this dispute, "annual" is subject to two different meanings: the first is "covering the period of a year," as plaintiff proposes, and the second is "occurring or happening every year or once a year," as defendant suggests (Merriam-Webster's Collegiate Dictionary [10th ed]). To illustrate, a corporation produces an annual report; the document covers corporate operations for the year. The corporation also holds an annual meeting; while the meeting occurs once a year, it is not necessarily held on the same date.

The words "annual premium" are certainly amenable to the interpretation advanced by defendant—that is, a sum that although payable once a year, does not necessarily purchase a full year of insurance coverage. However, this is not "the only construction which may fairly be placed on them" (*Lachs*, 306 NY at 365) so as to render the phrase unambiguous as a matter of law.

The term "annual premium" is widely used in the insurance area, and it has therefore attained the status of a term of art. Where a term has acquired a technical meaning, the technical construction is preferred over the common meaning except when "another intention is established, as where there is a non-technical meaning and one party is a layperson" (Calamari and Perillo, Contracts § 3.13, at 159 [5th ed]).

The problem in resolving the ambiguity issue is one of context. If the term "annual premium" is construed solely with reference to the life insurance policy, then a comparison of four different provisions—those of the policy governing the policy date, premium payment and the table of premiums,[2] together with the conditions for effectiveness of coverage contained in

2. The insurance policy provides, "The consideration for this Policy is the application and payment of the Total Initial Premium shown in the Schedule

the insurance application—reveals that, in the first year, the period of coverage is less than the full policy year. However, if the operative question is what period of coverage the insured should reasonably expect to receive in return for the payment of an annual premium, the obvious ambiguity arises. The common practice throughout the insurance industry is to calculate premiums on a yearly basis (*e.g. Holmes Protection of N.Y. v National Union Fire Ins. Co.*, 152 AD2d 496 [1989] [one-year period]; *Matter of Ideal Mut. Ins. Co.*, 231 AD2d 59, 62 [1997] [12 months]). Even the subject life insurance contract lists the "Current Annual Premium" for each policy year, and only in the first year does the annual premium afford less than a full year's coverage. Therefore, if one were to ask the hypothetical reasonable person how much insurance coverage will be received in return for payment of an "annual" premium, it would be eminently reasonable to expect the answer to be, "One year."

A party who assigns a narrower interpretation to a commonly understood term bears the burden to prove that the parties accepted that interpretation as controlling (*see Frigaliment Importing Co. v B.N.S. Intl. Sales Corp.*, 190 F Supp 116, 121 [SD NY 1960]). Any ambiguity in an insurance policy is construed against the insurer in favor of the interpretation that would be placed upon the term by the average person (*Mostow*, 88 NY2d at 326-327). As noted by the Court of Appeals in *Hartol Prods. Corp. v Prudential Ins. Co.* (290 NY at 50):

> "[I]nsurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import" (quoting *Janneck v Metropolitan Life Ins. Co.*, 162 NY 574, 577-578 [1900]).

Defendant's contract offends this general rule of drafting. While defendant places great emphasis on the peculiar terms of its

on or before delivery." The schedule indicates that the "policy date" is identical to the date of issue, September 2, 1997. The table of premiums states, "The Current Annual Premium is that premium which the Company anticipates will be payable on the date shown." The table lists the "Current Annual Premium" for each "Policy Yr Beginning SEPTEMBER 2." The section entitled "Policy Date" recites, "Policy anniversaries, policy years, policy months and Premium Due Dates are measured from the Policy Date. The first policy year begins on the Policy Date."

policy defining the coverage afforded in the first year, significantly, it does not go so far as to argue that a reasonable person would expect to receive less than 365 days of insurance coverage in return for the payment of an annual premium. Defendant's indiscriminate use of the term "annual" to describe all premium payments due under the policy is misleading in the absence of a clear explanation that the initial premium payment does not purchase a full year of coverage if the consumer elects to make payment at the time the policy is delivered.

The use of the term "annual premium" in the subject life insurance policy is consistent with neither its common meaning nor its general use within the insurance industry. Moreover, its peculiar meaning is not readily discernible from a reading of the policy. As stated by the Ohio Court of Appeals in *Margulies v Guardian Life Ins. Co. of Am.* (2003 Ohio 1959, ¶ 24, 2003 WL 1903437, *3, 2003 Ohio App LEXIS 1870, *9 [Ct App 2003], *appeal not accepted for review* 99 Ohio St 3d 1545, 795 NE2d 683 [2003]), "[r]equiring an insured to read four distinct sections, contained in two separate documents comprising an insurance contract, to gain an understanding of something as basic as the length of the initial coverage term renders this contract ambiguous." Confronted with the similarly convoluted contract language of this policy, plaintiff should be afforded the opportunity to demonstrate that he received materially less under defendant's life insurance policy than he was reasonably given to expect.

Plaintiff, a lawyer, is hardly a paradigm of the typical life insurance policyholder and, therefore, not the best representative of the putative class. However, even holding plaintiff to the standard of contract interpretation expected of an attorney, it still would have been impossible for him to make an informed election between the two available payment methods based on the information available at the time, which was limited to the life insurance application. While the application makes it clear that coverage will not take effect until the policy is delivered and the initial premium paid, it does not disclose that, under this option, the initial premium will apply to a period of time for which no coverage is provided. Only after delivery of the policy (and payment "on or before policy delivery") would it be apparent, to the well-versed reader, that defendant was collecting an unearned premium. Defendant offers no excuse for its failure to make this disclosure in its application.

Finally, defendant does not state any reason why it charged its insured for a period of time when no insurance coverage was

provided. The annual premium for the first year is the same premium charged for each succeeding year during the initial 10-year policy term. Plaintiff's policy lists annual premium charges of $1,720 for each "policy year" beginning September 2nd. In the first year, however, the policy year encompasses the period prior to effective date of the policy, from the date of issuance on September 2nd to the date of delivery on September 24th.

In the procedural posture of a motion to dismiss directed at the pleadings pursuant to CPLR 3211, "the allegations of a complaint, supplemented by a plaintiff's additional submissions, if any, must be given their most favorable intendment" (*Arrington v New York Times Co.*, 55 NY2d 433, 442 [1982], *cert denied* 459 US 1146 [1983]; *see Dulberg v Mock*, 1 NY2d 54, 56 [1956]). So read, the complaint suggests that the insurer, without economic justification, routinely employed inadequate disclosure, obtuse contract language contained in multiple provisions in two separate writings, the unusual use of a term of art and inequality of bargaining power to exact unearned premiums from its policyholders. Under these circumstances, it is inappropriate to grant summary dismissal to defendant based on the very contract used to accomplish this end.

Plaintiff's cause of action for unjust enrichment was properly dismissed. The general rule, as stated by this Court in *Hohenberg Co. v Iwai N.Y.* (6 AD2d 575, 578 [1958]), is that "where there is an express contract no recovery can be had on a theory of implied contract." "Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*" (*La Rose v Backer*, 11 AD2d 314, 320 [1960], *amended* 11 AD2d 969 [1960], *affd* 11 NY2d 760 [1962]). Since this dispute is governed by the terms of a written contract, the cause of action for unjust enrichment is not viable.

Accordingly, the order granting defendant's motion to dismiss the complaint should be modified to reinstate the cause of action for breach of contract.

BUCKLEY, P.J., and WILLIAMS, J., concur with SULLIVAN, J.; TOM, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered January 30, 2003, affirmed, without costs or disbursements.