OPINION OF THE COURT
Stein, J.
The principal issue raised in these cases is when the statute of limitations begins to run with respect to a tenant’s legal challenge to a termination of Section 8 benefits by respondent New York City Housing Authority (NYCHA). We hold that, pursuant to a federal consent judgment, the statute begins to run upon the tenant’s receipt of a “T-3 letter,” regardless of whether NYCHA has proved that it mailed other notices required by the consent judgment to be sent to the tenant before the T-3 letter. Because petitioners did not commence these proceedings within four months of their receipt of the respective T-3 letters, we reverse and dismiss the petitions in both cases.
*273 L
Pursuant to Section 8 of the US Housing Act of 1937 (42 USC § 1437f [hereinafter Section 8]), the federal government provides rent subsidies to low-income individuals and families to enable them to rent privately-owned housing. NYCHA has a contract with the federal government to administer the Section 8 program in New York City (see 42 USC § 1437f [b] [1]). To partially resolve a federal class action brought by a group of tenants alleging due process violations committed by NYCHA in the termination of their Section 8 benefits, the parties to that action entered into what is called the Williams first partial consent judgment (see Williams v New York City Hous. Auth., US Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984). It is undisputed that the consent judgment sets forth a specific procedure that NYCHA must follow when terminating benefits.
“First, after a preliminary determination that there exists a basis for termination, NYCHA must send the participant a warning letter specifically stating the basis for the termination and, if appropriate, seeking the participant’s compliance. Thereafter, if the conditions which led to the preliminary determination have not been remedied within a reasonable time, NYCHA must send a second written notice, the Notice of Termination [called a T-l letter], by certified and regular mail, stating the specific grounds for termination and informing the participant that he or she may request a hearing (and an optional pre-hearing conference). If the participant does not respond to the Notice of Termination or T-l letter, NYCHA is required to mail a Notice of Default [called a T-3 letter] advising the participant that the rent subsidy will be terminated and the grounds therefor and affording the participant another opportunity to request a hearing. If the participant takes no action after the Notice of Default or T-3 letter, the rent subsidy will be terminated on the 45th calendar day following the date of mailing of the Notice of Default. If, however, a participant requests a hearing after the 45-day period, the participant’s default may be reopened ‘upon a showing of good cause’ ” (Matter of Fair v Finkel, 284 AD2d 126, 127-128 [1st Dept 2001] [footnotes omitted]).
*274 Both of the cases before us involve the interpretation of the parameters of the Williams consent judgment.

Matter of Banos v Rhea

NYCHA terminated the Section 8 benefits of petitioner Tayinha Banos effective June 30, 2010. Banos alleged that she never received a warning letter, T-l letter or T-3 letter. However, she acknowledged receiving something from her landlord in June 2010 that caused her to send an inquiry to NYCHA, and further acknowledged that she received a responsive letter from NYCHA in early July 2010, informing her that her benefits had been terminated. In February 2012, Banos commenced this CPLR article 78 proceeding against NY-CHA and its then-Chair, John Rhea[1] (hereinafter collectively referred to as NYCHA), seeking to annul NYCHA’s determination as arbitrary, capricious, in violation of due process and contrary to law, and to reinstate her benefits.
NYCHA moved to dismiss the proceeding as time-barred. In its motion papers, NYCHA provided affidavits from two employees setting forth the agency’s mailing procedures for the T-3 letter. The affidavits were supported by a copy of the T-3 letter sent to Banos, a mail log, and a United States Postal Service (USPS) Track and Confirm report. Although NYCHA’s motion papers addressed the mailing of the T-3 letter to Banos, they did not mention anything about having sent her a warning letter or a T-l letter.
Supreme Court denied NYCHA’s motion, finding that, because NYCHA failed to show that it strictly complied with the consent judgment’s requirement to send all three notices, the statute of limitations did not begin to run. The court then provided NYCHA time to submit an answer to the petition. The Appellate Division affirmed (111 AD3d 707 [2d Dept 2013]). Agreeing that the record failed to show that NYCHA mailed the warning letter and the T-l letter, the majority concluded that “NYCHA’s termination of the petitioner’s Section 8 benefits was in violation of lawful procedure” and, therefore, the statute of limitations did not begin to run {id. at 708). The dissent would have dismissed the petition on the basis that the Williams consent judgment specifically provided that the time to commence a proceeding to challenge a termination of benefits began to run from receipt of the T-3 letter {see id. at 708-714 *275 [Miller, J., dissenting]). According to the dissent, Banos’ bare assertion that she did not receive the T-3 letter was insufficient to rebut the presumption of delivery created by NYCHA’s proof, and she failed to commence this proceeding within four months of receipt. The Appellate Division granted NYCHA leave to appeal, certifying the question as to whether its decision was correct (2014 NY Slip Op 67900 [U] [2d Dept 2014]).

Matter of Dial v Rhea

NYCHA contends that it mailed a T-3 letter to petitioner Viola Dial in August 2007 by regular and certified mail. In contrast, Dial denies receiving any warning letter, T-l letter or T-3 letter. However, Dial’s landlord, respondent 690 Gates, LP, made her aware in December 2008 that NYCHA had terminated her Section 8 benefits. Dial sent letters to NYCHA in December 2008 and September 2010, seeking an explanation and reinstatement of her benefits. NYCHA promptly responded to each letter, declining Dial’s requests for reinstatement and informing her that her benefits were terminated effective October 31, 2007.
In May 2011, Dial commenced this CPLR article 78 proceeding against Rhea, as Chair of NYCHA (who we generally refer to as NYCHA, which is the real party in interest), and 690 Gates. NYCHA moved to dismiss the petition as time-barred. To demonstrate that it mailed the T-3 letter to Dial, NYCHA submitted affidavits from two of its employees, as well as a reply affidavit, a copy of the T-3 letter mailed to Dial and mail logs. To explain the absence of records specifically pertaining to the mailing of the T-3 letter to Dial, NYCHA also proffered information indicating that the USPS Track and Confirm system maintains records for certified mailings for only two years.
Supreme Court denied NYCHA’s motion to dismiss and granted the petition on the merits, annulling NYCHA’s determination and ordering reinstatement of Dial’s benefits retroactive to September 1, 2007. The court found that NYCHA did not comply with the notice requirements, as it failed to serve a warning letter and submitted insufficient proof that T-l and T-3 letters were properly mailed to Dial. The Appellate Division affirmed, concluding that NYCHA bore the burden of showing that it served all three notices before its determination could be considered final and binding on a tenant (111 AD3d 720 [2d Dept 2013]). Finding that NYCHA failed to show that it mailed two of the three notices (the warning letter and T-l *276 letter), the Appellate Division determined that the statute of limitations did not begin to run. The Court implicitly found that NYCHA demonstrated that it mailed the T-3 letter to Dial (see id. at 722-723). The Appellate Division granted NYCHA leave to appeal, certifying the question as to whether its decision was correct (2014 NY Slip Op 70575[U] [2d Dept 2014]).
IL
All of the parties agree that a four-month statute of limitations applies to proceedings challenging NYCHA’s termination of Section 8 benefits (see CPLR 217 [1]). There is also no question that the time to commence such a proceeding begins to run when the agency determination “becomes final and binding upon the petitioner” (CPLR 217 [1]; see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]). The Williams consent judgment specifically addresses when a NYCHA determination to terminate Section 8 benefits becomes final and binding. The question before us revolves around the proper interpretation of the applicable provision of that consent judgment.
In general, a stipulation or consent judgment is a contract between parties and must be construed according to the rules of contract interpretation. Stipulations embody a compromise between competing parties that, if not ambiguous, must be construed according to their plain language, without relying on what a party may have been able to prove in litigation (see United States v ITT Continental Baking Co., 420 US 223, 236-237 [1975]; Matter of Fox Ridge Motor Inn, Inc. v Town of Southeast, N.Y., 85 AD3d 785, 786 [2d Dept 2011]). Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous (see Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]).
The plain language of the Williams consent judgment draws a distinction between what is required to commence the limitations period for a challenge to a termination of Section 8 benefits, on the one hand, and what is required for NYCHA to establish the merit of such a termination — including NYCHA’s full compliance with the notice requirements — on the other hand. The consent judgment addresses the statute of limitations in paragraph 22 (f) as follows: “[F]or the purposes of Section 217 and Article 78 of the [CPLR], the determination to terminate a [Section 8] subsidy shall, in all cases, become final *277 and binding upon receipt of the Notice of Determination pursuant to paragraph ‘22(a)’ hereinabove, or the Notice of Default, pursuant to paragraph ‘3(e)’ above” — i.e., the T-3 letter — with an exception that is not relevant here.[2]
NYCHA contends that the plain language of paragraph 22 (f) states that a determination is final and binding upon the tenant’s receipt of the T-3 letter, without any mention of the warning letter or T-l letter. According to NYCHA, the purpose of the reference to paragraph 3 (e) is simply to specify or clarify the particular notice of default (the T-3 letter) that will be final and binding, as the consent judgment also refers to another type of default (see para 22 [d] [referencing a tenant’s default in appearing at a scheduled hearing]). Hence, NYCHA argues that, to succeed on its statute of limitations defense, it need prove only that a tenant received the T-3 letter and failed to commence a proceeding to challenge the termination of Section 8 benefits within four months of the date of such receipt.
In contrast, Banos and Dial contend that the phrase in paragraph 22 (f) “pursuant to paragraph ‘3(e)’ above” should be interpreted to mean that the notice of default must have been properly issued after strict compliance with all of the requirements of paragraph 3 (e). That paragraph begins, “[i]n the event that the participant does not respond to the notice as provided for in Section 3(b) above, a Notice of Default, in Spanish and English, shall be mailed to the participant.” According to Banos and Dial, one must then go to paragraph 3 (b), referenced in paragraph 3 (e), which provides that “if the conditions which led to the preliminary determination have not been remedied within a reasonable period of time after the mailing of the warning letter, a notice in Spanish and English [i.e., the T-l letter] shall be sent to the participant by certified mail with a copy by regular mail.” Paragraph 3 (b) also sets forth the information that must be included in the T-l letter. The warning letter mentioned in paragraph 3 (b) is described in paragraph 3 (a). The introductory language to paragraph 3 provides that these steps involving the three letters must be taken after the preliminary determination to terminate benefits that is described in paragraph 2. Thus, under the reasoning urged by Banos and Dial, in order to interpret the meaning of paragraph 22 (f), we would also be required to construe *278 paragraphs 2 and 3 (a), (b) and (e) — that is, to understand paragraph 22 (f), we must incorporate all of paragraph 3 (e), which, in turn, refers to paragraph 3 (b), which indirectly refers to paragraph 3 (a), which indirectly refers to paragraph 2.
Although all portions of a contract should be read together to determine its meaning (see Matter of Bombay Realty Corp. v Magna Carta, 100 NY2d 124, 127 [2003]), courts may not distort the meaning of words, under the guise of interpretation, so as to create a new contract (see Consedine, 12 NY3d at 293). In the Williams consent judgment, paragraph 3 contains the notice requirements, while paragraph 22 (f) addresses the statute of limitations. Paragraph 3 does not lose its meaning if it is interpreted alone, as establishing the procedure for notices, without being fully incorporated into paragraph 22. Similarly, the language of paragraph 22 (f) makes sense on its own, without circuitously winding through paragraph 2 and three subdivisions of paragraph 3 for its interpretation. Under the plain language of paragraph 22 (f), a determination to terminate benefits becomes final and binding on a tenant for statute of limitations purposes upon receipt of the T-3 notice. Moreover, the purpose of the reference in paragraph 22 (f) to paragraph 3 (e) is to clearly identify the T-3 letter as the relevant notice; there is no indication that the reference was intended to incorporate all of the procedural requirements contained in paragraph 3 as conditions precedent to the commencement of the limitations period. Stated simply, receipt of the T-3 letter, alone, starts the clock.
Contrary to the arguments advanced by Banos and Dial, our interpretation does not defeat the purpose of the Williams consent judgment, which is to prevent the unnecessary termination of Section 8 benefits. The T-3 letter informs the tenants that Section 8 benefits will be terminated in 45 days, provides a reason for the termination, and informs the tenants that they may still request a hearing within 45 days (in which case benefits will continue until a final determination is made), that a challenge received after 45 days will be considered if “good cause” is shown, and that, if they wish to challenge the determination in court, they must do so within four months of the date of the notice. While the consent judgment provides the added protection of two additional notices — without which a termination of benefits will not be upheld on the merits if timely challenged — the T-3 letter contains sufficient information to put tenants on notice of the termination and their rights *279 with respect thereto, and to advise them as to how to proceed, such that it is not a deprivation of due process to designate that document as the trigger for commencement of the statute of limitations.
Nor will our interpretation allow or encourage NYCHA to disregard its obligation to provide all notices required by the Williams consent judgment. Inasmuch as the limitations period does not begin to run until the tenant’s receipt of the T-3 letter, at least that notice must be given before NYCHA can validly raise timeliness as a defense to any challenge by a tenant. Further, NYCHA has no incentive to fail to provide the other two required notices, as such failure will result in NY-CHA losing any timely challenge on the merits and, consequently, annulment of its determination to terminate benefits and potential reinstatement of such benefits (see Matter of Fair, 284 AD2d at 128-129; see also Matter of Robinson v Martinez, 308 AD2d 355, 355 [1st Dept 2003]). In any event, the issue of the merits of NYCHA’s determination is entirely separate and distinct from the question of timeliness. In other words, the question of whether NYCHA followed proper procedure in reaching its determination relates to the merits of the underlying petition, but does not affect the finality of its determination for statute of limitations purposes.[3] To hold otherwise would allow a review of the merits — i.e., finding that NYCHA’s determination was in “violation of lawful procedure” pursuant to CPLR 7803 (3) — either before deciding the dispositive statute of limitations issue or despite the petition being untimely.[4]
For these reasons, we hold that the timeliness of a proceeding against NYCHA challenging a termination of Section 8 benefits is measured from the tenant’s receipt of the T-3 letter, regardless of whether NYCHA proves that it mailed the *280 other two notices (see Matter of Parks v New York City Hous. Auth., 100 AD3d 407, 408 [1st Dept 2012]; Matter of Lopez v New York City Hous. Auth., 93 AD3d 448, 448-449 [1st Dept 2012]; Matter of Fernández v NYCHA Law Dept., 284 AD2d 202, 202 [1st Dept 2001]). While this rule may result in the dismissal of petitions for some tenants with otherwise meritorious claims, such a result is inherent in any limitations period. However, statutes of limitations embody an important public policy of providing finality for agency determinations and reflect a legislative judgment to shield parties from having to defend against stale claims (see Zumpano v Quinn, 6 NY3d 666, 673 [2006]; Matter of Best Payphones, Inc., 5 NY3d at 34 [recognizing a policy reason for abbreviated time frames applicable to CPLR article 78 proceedings that “the operation of government agencies should not be unnecessarily clouded by potential litigation”]). In arriving at the terms of the Williams consent judgment, this policy — set forth in paragraph 22 (f)— was evidently balanced against the policy underlying the procedural requirements of paragraphs 2 and 3 for a valid termination of benefits.[5]
Turning to the contentions of Banos, Dial and 690 Gates that NYCHA failed to establish that it properly mailed the T-3 letters, paragraph 22 (g) of the Williams consent judgment contains a rebuttable presumption that the T-3 letter is received “on the fifth day following the date of mailing.” In each case before us, the Appellate Division found, either explicitly or implicitly, that NYCHA established proper mailing of the T-3 letter (see 111 AD3d at 708; id. at 711 [Miller, J., dissenting]; 111 AD3d at 722-723). Those factual determinations are supported by the record in each case, and each petitioner’s bare denial of receipt is insufficient to rebut the presumption contained in paragraph 22 (g) of the consent judgment (see Kihl v Pfeffer, 94 NY2d 118, 122 [1999]; Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830 [1978]; Matter of Hudson House, LLC v New York State Div. of Hous. & Community Renewal, 89 AD3d 1084, 1084-1085 [2d Dept 2011]). Thus, the statute of limitations began to run five days after mailing of the T-3 letters, notwithstanding the absence of proof regarding mailing of *281 the warning letters or T-l letters. The parties do not dispute that, under this interpretation of the consent judgment, each of these proceedings was untimely if measured from the applicable date.[6]
Accordingly, in each case, the order of the Appellate Division should be reversed, without costs, and NYCHA’s motion to dismiss the petition as time-barred granted. In Matter of Ba-nos, we answer the certified question in the negative and, in Matter of Dial, it is unnecessary for us to answer the certified question.

. Rhea is NYCHA’s former Chair; Shola Olatoye is the current Chair.

. The notice of determination mentioned in paragraph 22 (a) concerns a determination made after a hearing, which is also not relevant here.

. Notably, even arguments concerning violations of due process may be precluded if a legal challenge is untimely (see Solnick v Whalen, 49 NY2d 224, 227 [1980]; Matter of Saunders v Rhea, 92 AD3d 602, 603 [1st Dept 2012]).

. The dissent begins by stating that the Williams consent judgment established a three-step procedure for terminating Section 8 benefits and that “[t]he majority opinion effectively creates a one-step procedure for terminating Section 8 benefits” (dissenting op at 281). That statement reflects a misinterpretation of our decision, and conflates a merits determination with a conclusion concerning the timeliness of a challenge to a termination of benefits. We, like the dissent, recognize the consent judgment’s three-step procedure for terminating benefits; however, unlike the dissent, we also recognize the consent judgment’s reliance on just the final one of those steps for determining when the statute of limitations begins to run.

. In fact, NYCHA asserts that, while the tenants in Williams gained a three-step notice procedure to terminate Section 8 benefits that is much broader than the notice required by federal law (see 24 CFR 982.555 [c] [2]), NYCHA’s only real gain in the consent judgment was the delineation of the T-3 notice as the definitive starting point for limitations purposes.

. Based on our analysis, we need not reach NYCHA’s alternative arguments that the statute of limitations starts running when a tenant knew or should have known of the termination of benefits, or that laches bars either of these proceedings.