Appeals from two orders of the Supreme Court, Kings County (Lawrence Knipel, J.), dated June 10, 2015, and September 21, 2015, respectively. The order dated June 10, 2015, denied the plaintiffs’ motion to preliminarily enjoin certain construction allegedly in violation of applicable height limitations. The order dated September 21, 2015, insofar as appealed from, upon renewal of the plaintiffs’ motion to preliminarily enjoin certain construction, adhered to the original determination denying that motion, granted the defendants’ separate motions pursuant to CPLR 3211 (a) (5) to dismiss the complaint insofar as asserted against each of them as untimely, and denied that branch of the plaintiffs’ cross motion which was for leave to amend the complaint.
 

 Ordered that the appeal from the order dated June 10, 2015, is dismissed, as that order was superseded by so much of the order dated September 21, 2015, as was made upon renewal; and it is further,
 

 Ordered that the order dated September 21, 2015, is affirmed insofar as appealed from; and it is further,
 

 Ordered that one bill of costs is awarded to the defendants appearing separately and filing separate briefs.
 

 These appeals involve the development of buildings upland of Pier 1 in Brooklyn Bridge Park containing a hotel, restaurant, and residential units. In 2005, Brooklyn Bridge Park Development Corporation (hereinafter BBPD) and Empire State Development Corporation (hereinafter ESD) adopted a General Project Plan for the park which would override local zoning regulations. They conducted an environmental review of the plan under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), during which community members expressed concern that the new development not block the existing views of the Brooklyn Bridge roadbed from the Brooklyn Promenade. The final environmental impact statement (hereinafter FEIS) limited the northern building to a height of 100 feet, and the southern building to a height of 55 feet. The northern building would be substantially similar in height to the existing Cold Storage buildings it would replace and would not significantly block existing views of the Brooklyn Bridge from the Brooklyn Promenade. The FEIS provided that “[a]ny required parapet and mechanical equipment would be included in the proposed building envelope.” BBPD and ESD approved the plan and thereafter adopted a Modified General Project Plan (hereinafter MGPP), which stated that “[t]he residential and hotel uses would be located in two buildings, one of approximately 55 feet and one of approximately 100 feet in height.”
 

 Brooklyn Bridge Park Corporation (hereinafter BBP) was established to assume responsibility for the planning, construction, maintenance, and operation of the park. In July 2010, the City of New York, ESD, BBPD, and BBP entered into a project agreement. In 2011, BBP released a request for proposals to solicit designs for the buildings. In response to developer questions concerning the height limitations of the MGPP, BBP issued an amendment to the request for proposals, stating that the height limitations would be measured from the base plane and “[t]he height attributed to rooftop mechanical equipment and other Permitted Obstructions will be treated in a manner consistent with the NYC Zoning Resolution,” which generally allows certain permitted obstructions such as bulkheads and mechanical equipment to penetrate maximum height limits. Design proposals were received and community comments were received thereon. On June 19, 2012, the BBP Board selected a developer and approved the execution of development leases. Presentations of the working designs were made to community groups which showed various rooftop structures extending over the height limitations of the MGPP. Following Hurricane Sandy in October 2012, the designs were amended to reflect a higher base plane. Measurement of the buildings was made from the new base plane, thereby raising the height of the buildings an additional approximate four feet.
 

 Building plans were filed with the Department of Buildings (hereinafter DOB) in March 2013, which showed a 30.1-foot-tall bulkhead on the northern hotel building. Final plans were thereafter submitted to BBP for review. BBP purportedly approved the northern building design plans on July 30, 2013, and ESD purportedly approved them on September 12, 2013. After consultation with ESD, BBP purportedly approved final plans for the southern building on December 4, 2013. Building permits were issued by DOB between December 2, 2013, and June 12, 2014. Construction commenced in July 2013. In September 2013, the project architect presented the final designs to community groups, although revised plans were filed with the DOB thereafter. On September 10, 2014, the northern hotel building reached its maximum height. Around this time, members of the community began to object that the height of the northern hotel building violated the MGPP and was obstructing the view of the roadbed of the Brooklyn Bridge from the Brooklyn Promenade. In response, BBP took the position that construction complied with the height limitations of the MGPP. In late December 2014, the plaintiff Save the View Now was formed. Over the next few months, it met and corresponded with BBP concerning the height limitations, seeking to halt construction of the hotel. As a result, BBP submitted the plans for the southern building to DOB to review for compliance with the Scenic View District. However, it did not take any action with respect to the height limitations of the MGPP, and adhered to its position that the buildings were in compliance with the height limitations.
 

 On or about April 21, 2015, the plaintiffs commenced this action seeking a judgment declaring, inter alia, that the buildings were being constructed in excess of their height limitations in violation of the MGPP, permanently enjoining construction of any portion of the buildings that violated the MGPP, and directing the defendants to remove any parts of the buildings which violated the MGPP. The plaintiffs moved for a preliminary injunction halting any construction in excess of the height limitations, as measured from the sidewalk. In an order dated June 10, 2015, the Supreme Court denied the plaintiffs’ motion, determining, among other things, that the action was untimely commenced. The defendants thereafter separately moved pursuant to CPLR 3211 (a) (5) to dismiss the complaint insofar as asserted against each of them as untimely. The plaintiffs cross-moved for leave to renew their motion for a preliminarily injunction and for leave to amend the complaint. In an order dated September 21, 2015, the court granted leave to renew and, upon renewal, adhered to its original determination denying their motion for a preliminary injunction. The court granted the defendants’ motions to dismiss the complaint as untimely, and denied that branch of the plaintiffs’ cross motion which was for leave to amend the complaint. The plaintiffs appeal.
 

 An action for a declaratory judgment is generally governed by a six-year statute of limitations (see CPLR 213 [1]). However, where a declaratory judgment action involves claims that could have been made in another proceeding for which a specific limitation period is provided, the action is subject to the shorter limitations period (see Solnick v Whalen, 49 NY2d 224, 229-230 [1980]; Town of Hempstead v AJM Capital II, LLC, 130 AD3d 607, 608 [2015]). Where an action could have been brought pursuant to CPLR article 78, the four-month statute of limitations applicable to such proceedings applies (see CPLR 217 [1]; Matter of Banos v Rhea, 25 NY3d 266, 276 [2015]; Lenihan v City of New York, 58 NY2d 679, 682 [1982]; Matter of Sutherland v New York State Dept. of Envtl. Conservation, 122 AD3d 759 [2014]).
 

 A proceeding pursuant to CPLR article 78 may be brought to review a determination of a public body or officer which is “final and binding upon the petitioner” (CPLR 217 [1]; see CPLR 7801 [1]). There are two requirements for fixing the time when agency action is final and binding upon the petitioner: “First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party” (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]). A determination is final and the statute of limitations begins to run when the agency’s “definitive position on the issue [becomes] readily ascertainable” to the complaining party (Matter of Riverkeeper, Inc. v Crotty, 28 AD3d 957, 962 [2006]; see New York State Assn. of Counties v Axelrod, 78 NY2d 158, 165 [1991]; Matter of School Adm’rs Assn. of N.Y. State v New York State Dept. of Civ. Serv., 124 AD3d 1174, 1176-1177 [2015]), so that the petitioner knew or should have known that it was aggrieved (see Matter of Zimmerman v Planning Bd. of Town of Schodack, 294 AD2d 776, 777 [2002]; McComb v Town of Greenville, 163 AD2d 369 [1990]).
 

 Here, the Supreme Court properly determined that this action could have been brought as a proceeding pursuant to CPLR article 78 to review BBP’s and ESD’s approval of construction allegedly in violation of the MGPP (see CPLR 7803 [3]; Matter of Valachovic v Constantino, 137 AD2d 945, 946 [1988]). Although the plaintiffs are correct that the defendants failed to submit proof establishing the dates of the relevant approvals of construction which incorporated rooftop structures over the height limitations listed in the MGPP and measurement of building height from the revised base plane following Hurricane Sandy, or that the public was notified of these approvals, the approval of construction allegedly in excess of the height limitations in the MGPP was readily ascertainable by the plaintiffs, at the latest, by September 10, 2014, when the northern building reached its maximum height (see Matter of Zimmerman v Planning Bd. of Town of Schodack, 294 AD2d at 777). Further, the plaintiffs failed to establish that the defendants should be estopped from asserting the statute of limitations as a defense (see Zumpano v Quinn, 6 NY3d 666, 673-674 [2006]). The communications between the plaintiffs and BBP were insufficient to justify an estoppel, since the government defendants did not lull the plaintiffs into believing that they would take any action with regard to the height limitations of the MGPP such that the plaintiffs’ claims would be resolved without the need for litigation (see Terry v Long Is. R.R., 207 AD2d 881, 882 [1994]; cf. Roscigno v Town of Mount Kisco, 210 AD2d 573, 574 [1994]). Accordingly, this action, commenced seven months later, was untimely (see CPLR 217 [1]; Solnick v Whalen, 49 NY2d at 233). Therefore, the Supreme Court properly granted the defendants’ motions to dismiss the complaint as untimely, denied that branch of the plaintiffs’ cross motion which was for leave to amend the complaint (see Calamari v Panos, 131 AD3d 1088, 1091 [2015]), and, upon renewal, adhered to its original determination denying the plaintiffs’ motion to preliminarily enjoin certain construction (see CPLR 6301; Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]).
 

 The references by the City and BBP in their brief to matter that is dehors the record have not been considered by this Court in its determination of these appeals.
 

 Mastro, J.P., Roman, Miller and Connolly, JJ., concur.