Jay Difulvio & Assoc., Inc. v State of New York (2024 NY Slip Op 51078(U))

[*1]

Jay DiFulvio & Assoc., Inc. v State of New York

2024 NY Slip Op 51078(U)

Decided on August 14, 2024

Court Of Claims

Shillingford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 14, 2024
Court of Claims

Jay DiFulvio & Associates, Inc., Claimant,

against
The State of New York ,[FN1] 
 Defendant.

Claim No. 136506

For Claimant:
COSTELLO, COONEY & FEARON, PLLC
By: ERIN K. SKUCE, ESQ.
For Defendant:
HURWITZ FINE P.C.
By: KATHERINE A. FLEMING, ESQ.

Ruth Shillingford, J.

Claimant JAY DIFULVIO & ASSOCIATES, INC. (hereinafter "DiFulvio" or "Claimant") commenced this claim seeking indemnification from New York State Insurance Fund (hereinafter "SIF") to satisfy a judgment entered against it in an underlying third-party claim. Claimant moves (M-99641) and Defendant cross-moves (CM-99932) for summary judgment. For the following reasons, Claimant's motion is denied and Defendant's cross-motion [*2]is granted. 
 BACKGROUND
The claim, filed on June 22, 2021, alleges that Defendant, through its agency SIF failed to indemnify DiFulvio against a judgment entered in the Onondaga County Supreme Court on an underlying third-party claim. Claimant seeks an order declaring that SIF has a duty to indemnify and satisfy a judgment entered against it as a result of personal injuries sustained by Matthew Fisher (hereinafter "Fisher") on August 30, 2010 (Claimant's Exhibit A, NYSCEF Doc. No. 29). Issue was joined with the filing of Defendant's Verified Answer on January 20, 2022 (Claimant's Exhibit B, NYSCEF Doc. No. 30). Discovery was completed and the Note of Issue was filed on May 5, 2023. The instant motions follow.

 FACTS
The parties have stipulated to the following facts (see Stipulated Facts, NYSCEF Doc. No. 27):
On August 30, 2010, Fisher was working at a construction site known as Pizza Villa, situated at 409 Tulip Street, Liverpool, New York. Fisher suffered injuries after falling about ten feet down from the lower roof at the site. At the time of the accident, Claimant held a Workers' Compensation and Employers' Liability Insurance policy (hereinafter "The Policy"), issued by SIF. The Policy's effective date was from April 3, 2010 through April 3, 2011. SIF's "Employer's Liability Coverage contained within the policy is unlimited" (id. at ¶9). SIF "was notified of the underlying accident involving Matthew Fisher via Employer's Report of Work-Related Injury/Illness form C-2 filed with the Workers' Compensation Board on September 1, 2010" (id. at ¶14). SIF never "dispute[d] in the Workers' Compensation forum that Matthew Fisher was an employee of DiFulvio and did not controvert the Workers' Compensation claim" (id. at ¶15). "A March 17, 2011, notice of decision established the Workers' Compensation claim with DiFulvio as employer and Matthew Fisher as employee" (id. at ¶16). SIF paid medical treatment as well as indemnity benefits totaling $162,470.86.
Fisher initiated legal action under Labor Law §240(1) against Joseph Scordo, d/b/a Pizza Villa, the owner and sole proprietor of the construction site (hereinafter "Scordo") (Matthew Fisher v Joseph Scordo d/b/a Pizza Villa, Index No. 2010-7388) (id. at ¶20)("the Main Action"). Paragraphs 7 and 8 of the Amended Complaint in this action alleged that Mr. Fisher was employed by Claimant. Subsequently, Fisher moved for partial summary judgment on the issue of liability, which was granted on July 15, 2013 (id. at ¶21).
Scordo initiated a third-party action against Claimant, seeking common law indemnification and contribution (Matthew Fisher v Joseph Scordo d/b/a Pizza Villa v Jay DiFulvio & Associates, Inc. 2010-7388A) (id. at ¶23)(hereinafter "the Underlying Action"). SIF "agreed to provide [Claimant] defense and indemnification in the Underlying Action subject to a reservation of rights letter dated February 27, 2014" signed by one of SIF's attorneys (id. at ¶29). "By statute, the New York State Insurance Fund is only authorized by law to provide Workers' Compensation and Employer's Liability Coverage" (id. at ¶30).
With the consent of all the parties in the Main Action, the matter proceeded to Arbitration on the issue of damages only on August 30, 2016, resulting in a decision on December 6, 2016, awarding Fisher $810,488.96 (id. at ¶¶31-34). Scordo's liability carrier satisfied the arbitration award upon receipt of a Release and Settlement Agreement (id. at ¶35). SIF asserted a lien against the arbitration award for $162,470.62 and the parties settled on $105,284.62 in full satisfaction of the lien.
The third-party action continued and two of SIF's attorney's monitored the Underlying Action on behalf of SIF. By Order dated February 26, 2018, the Court determined Fisher was an independent contractor, not an employee at the time of his accident (id. at ¶43). Scordo then moved for summary judgment in the Underlying Action, seeking full common-law indemnification against Claimant, which was granted on May 16, 2019 (id. at ¶¶44-45). Scordo was awarded $29,683.00 for attorneys' fees, $30,736.56 for expenses, and $810,488.96 plus $176,281.35 in statutory interest, totaling $1,047,189.87.
SIF "defense of DiFulvio continued through the conclusion of the Underlying Action and Final Judgment . . . [SIF] did not issue a denial of coverage to [Claimant] at any time relative to the Underlying Action . . . [SIF] did not disclaim the obligation to indemnify [Claimant] at any time relative to the Underlying Action . . . [SIF] did not commence a Declaratory Judgment action against [Claimant] in relation to the issue of coverage in the Underlying Action . . . [Finally, SIF] did not withdraw its defense of [Claimant] in the Underlying Action" (id. at ¶¶47-51). SIF has declined to satisfy the underlying judgment. 
In determining that Fisher was an independent contractor and not an employee, Justice Paris held:
Despite how Third-Party Defendant (Claimant herein) and Fisher treated themselves, their intent for all legal purposes was to categorize or label Fisher as an independent contractor. This intent, in the Court's opinion, based on the record before it, was to circumvent, avoid and possibly defraud various governmental, tax and insurance obligations. Indeed, Mr. DiFulvio's invocation of his right under the Fifth Amendment and refusing to answer certain pertinent questions pertaining to these deductions confirms that opinion. Irrespective of how Fisher was thought of by Third-Party Defendant, he was designated by Third-Party Defendant as an independent contractor, as both testified to in their respective sworn deposition testimony.
***
Based on the record before the Court, the Court finds and determines that at the time of the accident, August 30, 2010, Fisher was an independent contractor as evidenced by the deposition testimony of both Fisher and Difulvio; that he was an independent contractor, that Fisher worked other jobs; that no withholding for tax, Social Security, Medicare or disability, et cetera, was deducted from his paychecks; that no W-2, except for 2008, was given by Third-Party Defendant; that no 1099s were issued by Third-Party Defendant to Mr. Fisher; that Fisher had his own tools for the work he performed on this job; that Fisher's tax returns show a Schedule C for Fisher Construction and amounts not separated for any specific payors; that Fisher was shown on Difulvio's books as "sub labor" and reimbursed for auto expenses; that there was limited control or direction over his work by Difulvio, as Fisher, according to deposition testimony, knew what to do; that the New York State Insurance Fund determined that Fisher was an independent contractor under Difulvio's Workers' Compensation policy/employer liability policy as verified by Mr. Difulvio

 (Defendant's Exhibit E, NYSCEF Doc. No. 55 at 3-6).

 DISCUSSION

In its motion and as clarified in its reply, Claimant asserts its entitlement to summary [*3]judgment based on the doctrine of latent ambiguity in the policy arising from the failure to define the terms "employee" and "must arise out of and in the course of the injured employee's employment by you" (Claimant's Memorandum of Law at 8). Specifically, as Claimant amplifies in its Reply Memorandum of Law, in this case, the Workers' Compensation Coverage and Employers' Liability Coverage are contained in the same policy and were not separately priced. Thus, it maintains that " . . . considering the language contained within the Employers' Liability coverage Part Two, which is inextricably linked to the Workers' Compensation Insurance Part One, which states 'A.1. The bodily injury must arise out of and in the course of the injured employees employment by you,' coupled with the agreement to pay sums that Difulvio legally must pay including damages, '4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer,' a reasonable businessperson would have thought himself covered in the situation herein" (Claimant's Reply Memorandum of Law at 4-5). 
Claimant then urges that " . . . whereas here, the Workers' Compensation Board had primary jurisdiction and issued its decision on the issue of employment, which is final and conclusive upon the State Fund, the extrinsic circumstances, i.e., a finding by the board that Fisher was an employee of DiFulvio and that his injuries arose out of and in the course of employment, creates a latent ambiguity within the policy or an unclear intention or expression that is open to more than one interpretation by an ordinary businessperson" (id. at 5-6).
In opposition to Claimant's motion and in support of its Cross-Motion for Summary Judgment, Defendant counters that it is entitled to summary judgment because "NYSIF has no obligation to indemnify DiFulvio because Fisher's injuries sustained while working as an independent contractor do not fall within the Policy's unambiguous grant of coverage" (Defendant's Memorandum of Law In Opposition to [Claimant's] Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment" (hereinafter "Defendant's Memorandum in Support"). The Court will first address Defendant's Cross-Motion.
Summary judgment is a "drastic remedy" and may be granted only when no triable issues of fact exist (Andre v Pomeroy, 35 NY2d 361, 364 [1974]; see CPLR 3212). A movant bears the initial burden of establishing the right to judgment as a matter of law by tendering sufficient evidence, in admissible form, demonstrating the absence of material issues of fact from the case (Matter of Eighth Jud. Dist. Asbestos Litig., 33 NY3d 488, 496 [2019], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). In this regard, conclusory assertions are insufficient to demonstrate the absence of any material issues of fact (Ayotte v Gervasio, 81 NY2d 1062 [1993]). The failure to make the initial prima facie showing requires denial of the motion, "regardless of the sufficiency of the opposing papers'" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez, 68 NY2d at 324). If the moving party has satisfied the prima facie obligation, however, the burden shifts and the party opposing the motion must demonstrate, also by admissible evidence, the existence of an issue of material fact (Vega v Restani Construction Corp., 18 NY3d 499 at 503 [2012], citing Alvarez, 68 NY2d at 324).
"Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous" (Matter of Banos v Rhea, 25 NY3d 266, 276 [2015] [internal citations omitted]). "`The test for ambiguity is whether the language in the insurance contract is susceptible of two reasonable interpretations'" (NIACC, LLC v Greenwich Ins. Co, 51 AD3d 883, 884 [2nd Dept, 2008], quoting MDW Enters. v CAN Ins. Co., 4 AD3d 338, 340-41 [2d Dept. 2004]). "Although all portions of a contract should be read [*4]together to determine its meaning . . ., courts may not distort the meaning of words, under the guise of interpretation, so as to create a new contract" (Matter of Banos v Rhea, 25 NY3d at 278 [internal citations omitted]).
In this case, "Part One - WORKERS COMPENSATION INSURANCE" of The Policy provides, in relevant part, as follows:
A. How This Insurance Applies
This workers' compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes death.
1. Bodily injury by accident must occur during the policy period.
***
B. We Will Pay
We will pay promptly when due the benefits required of you by the Workers' Compensation Law.
C. We Will Defend
We have the right and duty to defend at our expense any claim or proceeding against you for benefits payable by this insurance. We have the right to investigate and settle these claims or proceedings.
We have no duty to defend a claim or proceeding that is not covered by this insurance
(Claimant's Exhibit H, NYSCEF Doc. No. 36 at H77).
"PART TWO - EMPLOYERS' LIABILITY INSURANCE" provides, in relevant part:
1. How This Insurance Applies
This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
B. We will Pay
We will pay all sums you legally must pay as damages because of injury to your employees, provided the bodily injury is covered by this Employers' Liability Insurance.

 The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of bodily injury to your employee.
***
4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer
(id. at H78).
As the Court of Appeals has held, where a "plain English" clause excludes from coverage "claims that arise from bodily injury that your [the employer's] employees suffer on the job," such "unambiguous language makes the exclusion applicable to any claim arising from bodily injury, whether in contribution or indemnity . . . Coverage of these claims is excluded 'in clear and unmistakable language' under the policy in question" (Commissioners of the State Insurance Fund v Insurance Company of North America, 80 NY2d 992, 994 [1992][internal citations [*5]omitted]). Thus, the "court is not permitted to construe a clause in a way that drains it of its only intended meaning. To divine ambiguity here would violate that principle and would defeat the use of plain English language in this insurance policy and clause" (id.). This is precisely what Claimant seeks to do in this case.
"The terms 'employee' and 'independent contractor' are familiar ones, and their definitions are well known. Broadly speaking, an employee is someone who works for another subject to substantial control, not only over the results produced but also over the means used to produce results. A person who works for another subject to less extensive control is an independent contractor" (O'Brien v Spitzer, 7 NY3d 239, 242 [2006]). 
Here, the plain English language of The Policy provides coverage for bodily injury which "must arise out of and in the course of the injured employee's employment by [Claimant]"(Exhibit H at H78 )(emphasis added). It would then require Defendant to "pay all sums [Claimant] legally must pay as damages because of injury to [Claimant's] employees, provided the bodily injury is covered by [Claimant's] Employers' Liability Insurance" (id.). And even in the section that Claimant so heavily relies on with respect to a latent ambiguity, namely, damages claimed against Claimant in its "capacity other than as employer" as set forth in Part 2 Section B(4), there is still the requirement that payment is "because of bodily injury to [Claimant's] employee that arises out of and in the course of employment . . ." (id.)(emphasis added). 
SIF was created and maintained to insure employers against liability for personal injuries or death sustained by their employees (see Workers' Compensation Law §76[1]). While the term "employee" may not be explicitly defined in The Policy, it is clear from the context in which it is used, however, that it applies to persons employed by the insured, who is the employer. Here, Claimant fails to proffer other reasonable interpretations of the word "employee."
Defendant's argument is also supported by Judge Anthony J. Paris' Decision and Order rendered at the framed-issue hearing, held on January 4, 2018. According to Judge Paris, "[i]rrespective of how Fisher was thought of by Third-Party Defendant [DiFulvio], he was designated by the Third-Party Defendant as an independent contractor, as both testified to in their respective sworn deposition testimony" (Defendant's Exhibit E at 3). Judge Paris further held that "Third-Party Plaintiff [Scordo] has overcome the presumption of employee and Fisher fits the designation of independent contractor, and neither Fisher, nor Third-Party Defendant [DiFulvio] can shield themselves behind the statute passed to curb their illegal practice" (id. at 6).
Defendant further argues that DiFulvio is "judicially estopped" from referring to Fisher as an employee at the time of the accident (Defendant's Memorandum in Support at 6). However, "judicial estoppel" does not apply to this matter. "'Under the doctrine of judicial estoppel, also known as estoppel against inconsistent positions, a party may not take a position in a legal proceeding that is contrary to a position [the party] took in a prior proceeding, simply because [their] interests have changed'" (McGlynn v Burns & Harris, 223 AD3d 733, 735 [2nd Dept. 2024], quoting Bihn v Connelly, 162 AD3d 626, 627 [2nd Dept. 2018]). In this action, and the underlying tort action, DiFulvio's position has been consistent that Fisher was an "employee" and not an independent contractor. Nonetheless, Defendant has met its burden in proving that Fisher's injuries fall outside of the scope of the policy, because of his work status as an independent contractor and not an employee of Claimant at the time of the accident. Accordingly, for the reasons set forth above, Defendant has demonstrated a prima facie case of [*6]its entitlement to summary judgment. The burden now shifts to Claimant.
Notably, while Claimant cites to the purported inextricable linkage between the Workers' Compensation Insurance and the Employer's Liability Insurance, the former has no language limiting its coverage to Claimant's employees. Rather, it states that the workers' compensation insurance applies to bodily injury by accident or disease, which must occur during the policy period, and that it would pay "promptly when due the benefits required of [Claimant] by the Workers' Compensation Law" (Exhibit H at H77). On the other hand, the Employer's Liability Insurance portion specifies that Defendant is only responsible for coverage with respect to bodily injury sustained by Claimant's employee. "Although 'Employers' Liability insurance is inextricably linked to Workers' Compensation coverage' . . . coverage under the two parts may be evaluated separately" (American Home Assurance Company v Highrise Construction Company, 111 AD3d 446, 448 [1st Dept. 2013]) (internal citations omitted).
Claimant raises the doctrine of collateral estoppel and argues that the issue of Fisher's employment status was previously determined by the Workers Compensation Board (Claimant's Memorandum of Law at 11). Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same" (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984][internal citations omitted]). The proponent urging the use of collateral estoppel must "prove that the identical issue was necessarily decided in the prior action and is decisive in the present action" (D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990] [internal citations omitted]). The party resisting application of collateral estoppel in the second action has the burden to "establish the absence of a full and fair opportunity to litigate" that issue in the prior proceeding (id.). 
"The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999]). If collateral estoppel is properly applied in the second action, it will provide a sufficient basis for Claimant to meet its prima facie burden for summary judgment (see Hibbert v Avwontom, 35 AD3d 813, 814 [2d Dept 2006]). 
Where issue preclusion is concerned, "[t]he proponent of collateral estoppel must show identity of the issue, while the opponent must demonstrate the absence of a full and fair opportunity to litigate" (Jeffreys v Griffin, 1 NY3d 34 [2003] citing Schwartz v Public Adm'r of County of Bronx, 24 NY2d 65 [1969]).
Claimant urges that the Workers' Compensation Board, in its Notice of Decision dated March 17, 2011, establishing the claim, determined that Fisher was an employee of DiFulvio, therefore entitling Fisher to workers' compensation benefits (Claimant's Memorandum of Law, at 10, NYSCEF Doc. No. 42). Claimant further argues that Defendant concedes this point in the Stipulation of Facts at paragraph 16 (Claimant's Reply Memorandum, Pg. 3, NYSCEF Doc. No. 62).
The Court has reviewed the March 17, 2011 Notice of Decision of the Workers Compensation Board. At no place in the document does it indicate that the issue of "employer-employee" between Fisher and DiFulvio was necessarily determined. In fact, throughout the decision, there is no reference made to Fisher as "an employee", but rather, as "Claimant" or "worker" (Claimant's Exhibit M, NYSCEF Doc. No. 41). 
Additionally, there is nothing in the record that shows the identicality requirement as to [*7]the issue of "employer-employee" being fully and fairly litigated and resolved before the Workers Compensation Board. "For a question to have been actually litigated so as to satisfy the identicality requirement under Schwartz, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding" (Halyalkar v Board of Regents, 72 NY2d 261 [1988] citing Schwartz v Public Adm'r of County of Bronx, supra). "An issue is not actually litigated if there has been a failure to place a matter in issue by proper pleading or even because of a stipulation" (North Shore-Long Island Jewish Health System, Inc. v Aetna US Healthcare, Inc., 27 AD3d 439 [2nd Dept. 2006]). There is no evidence in the record to suggest that the issue of "employer-employee" was litigated and necessarily decided by the Workers Compensation Board.
Claimant further relies on the matter of Cunningham v the State of New York, 60 NY2d 248 (1983), for the proposition that a decision or award of the Workers' Compensation Board is final and conclusive upon the parties, including the State Insurance Fund, on all questions within its jurisdiction. This reliance is misplaced. 
In Cunningham, employees of the State received workers compensation benefits, and then proceeded to commence direct tort actions against their employer for wrongful death and intentional torts related to the Attica Uprising. The Court in Cunningham held that "by applying for and accepting such benefits, these Claimants have forfeited their rights to maintain wrongful death actions against respondent for intentional tort" (id. at 252 ). The Cunningham Court further stated that "[a] determination by the Workers' Compensation Board that a claimant's injuries are accidental is binding on the claimant even if he did not apply for or accept the benefits awarded, and precludes an action against the employer for intentional tort" (id.) There is no similarity between the instant claim and the facts in Cunningham, as there was no determination by the Workers' Compensation Board on the employer-employee issue, and Fisher did not bring a direct tort action against DiFulvio, but against the owner of the construction site — Scordo.
The distinction between "employee" and "independent contractor" is important because its final determination in the underlying third-party action factored into the ultimate resolution of the case. If Fisher were determined to be DiFulvio's employee, the third-party plaintiff (Scordo) would have been required to demonstrate a "grave injury" justification to collect contribution and indemnification from DiFulvio (NY Workers' Compensation Law §11). "Grave injury is a statutorily defined threshold for catastrophic injuries and includes only those injuries which are listed in the statute and determined to be permanent" (Blackburn v Wysong & Miles, Co., 11 AD3d 421, 422 [2d Dept. 2004]). Once Fisher was determined to be an independent contractor, Scordo was able to obtain a judgment against DiFulvio, without the heightened requirement of reaching the "grave injury" threshold.
Even assuming the issue was fully and fairly litigated before the Workers Compensation Board, it is clear that such determination was not afforded preclusive effect in the underlying action, because the parties to the third-party action both requested a framed-issue hearing, to litigate the issue fully and fairly whether the relationship between Fisher and DiFulvio was that of "employer-employee" or "independent contractor." Based on the findings at the framed-issue hearing, Fisher was found to be an independent contractor, thus further diluting Claimant's collateral estoppel arguments.
Claimant next clarifies in its Reply Memorandum of Law that it "has never contended and does not now contend that the heightened requires of Insurance Law §3420(d)(2) apply to [*8]the State Fund, but rather asserted that the failure to disclaim or deny coverage should be considered under the common law waiver and/or estoppel principles, which are separate and distinct" (Claimant's Reply Memorandum of Law at 8).In essence, Claimant urges that by handling the matter all the way through to its conclusion and judgment, wherein it controlled the entire direction of the case, including any possible settlement or change of strategy in the case, knowing what its defense to indemnification would be, Defendant should have disclaimed or abandoned its defense. 
Defendant counters that the defense provided to the Claimant was based on New York law requiring an insurer to provide a defense to allegations "even if groundless, false or fraudulent" but reserved its right to deny coverage if DiFulvio was not acting as Fisher's employer (Defendant's Memorandum in Support at 1-2).
An insurer's "denial or disclaimer of coverage [is] not untimely, since a disclaimer is unnecessary where, as here, the claim falls outside of the coverage terms rather than being subject to a policy exclusion" (Certain Underwiters at Lloyd's London v Covert Holdings, LLC, 218 AD3d 729, 730 [2nd Dept. 2023])(No duty to defend or indemnify where evidence later disclosed that the location of the incident was not part of insured area of coverage and insurer had provided a reservation of its rights). 
Furthermore, "'[t]he doctrine of estoppel precludes an insurance company from denying or disclaiming coverage where the proper defending party relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the loss of the right to control its own defense'" (id., quoting Lancer Indem. Co. v Peerless Ins. Co., 208 AD3d 768, 769 [2d Dept. 2022] [internal citations omitted]). "Accordingly, an insurer though in fact not obligated to provide coverage, may be precluded from denying coverage upon proof that the insurer 'by its conduct, otherwise lulled [the insured] into sleeping on its rights under the insurance contract'" (Certain Underwiters at Lloyd's London v Covert Holdings, LLC, 218 AD3d at 730, quoting County of Suffolk v. Ironshore Indem., Inc., 187 AD3d 1137, 1141 [2d Dept. 2020][internal citations omitted]). "Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered'" (Certain Underwiters at Lloyd's London v Covert Holdings, LLC, supra at 731, quoting Yoda, LLC v National Union Fire Ins. Co. of Pittsburgh, Pa., 88 AD3d 506, 508 [1st Dept. 2011]). 
In this case, Claimant cannot claim to have been lulled into sleeping on its rights where it was well aware of the categorization of Mr. Fisher in the first instance, and Defendant's February 27, 2014 reservation of rights letter specifically based on this employer/employee issue. As Judge Paris found, irrespective of how Claimant and Mr. Fisher deliberately chose to characterize his status, all their actions pointed to his status as an independent contractor with "this intent, in the Court's opinion, based on the record before it, . . . to circumvent, avoid and possibly defraud various governmental, tax and insurance obligations" (Defendant's Exhibit E at 3). Some of these actions included no withholding of taxes from his paycheck; no 1099's were issued; that he used his own tools to work; with the exception of 2008, no W-2's were issued; and he was designated as "sub labor" on Claimant's books.
DiFulvio's own deposition testimony confirmed that he had a ten-year work relationship on various projects with Fisher, an independent contractor whom he considered an equal; he distinguished between his employee and an independent contractor, wherein he would pay social security and health insurance on behalf of the former but not the latter; he provided no job [*9]training to Fisher; the latter had his own truck and tools; Fisher did not have to punch in; and Claimant, through his accountant, who refused to issue Fisher any 1099, would have reported Fisher to Defendant as an independent contractor (Exhibit J: Jay Difulvio's Deposition Transcript at 13-38). 
Fisher testified in his deposition that he had been an independent contractor and not an employee when he worked for Claimant as a carpenter for about a ten-year period; that although he requested 1099's, DiFulvio instead provided him with copies of the checks that he issued to him; that they had an agreement that instead of paying raises to Fisher, Claimant would instead put him on his workers' compensation plan; that Difulvio never paid for his health insurance except the year of this incident in 2010, when he gave him health insurance instead of a raise; that Claimant never gave him a W-2; that he knew from the beginning that he was being hired as an independent contractor; that he had no written contract with Claimant; that he had his own tools; that he was paid differently than Claimant's employees; and he worked for other companies (Exhibit I: Matthew Fisher's Deposition Transcript at 10-21). He made no mention of any expectation of Claimant obtaining liability coverage for him as an employee.
Furthermore, in its February 27, 2014 letter to Claimant, Defendant indicated that notwithstanding its agreement to defend Claimant in the Underlying Action, it was reserving its rights with respect to disclaimer and indemnification. Specifically, the letter provided as follows:
This letter will acknowledge receipt of a summons and complaint in the above captioned action [Matthew Fisher v. Joseph Scordio (sic)] in which you have been named a party. A review of the complaint indicates that the third party plaintiff seeks damages from you based upon allegations that your negligence caused or contributed to the plaintiff's injuries.
Under and pursuant to the terms of the above captioned policy of Workers' Compensation and Employer's Liability Insurance with the New York State Insurance Fund(NYSIF), please be advised that NYSIF agrees to defend your interests in this lawsuit, subject, however, to the following express reservations and limitations.
Coverage for defense and indemnification of you in connection with this lawsuit is based on the assumption that an employer/employee relationship existed between you and the plaintiff in this lawsuit when the accident complained of occurred. If it is later determined that you were not acting as plaintiff's employer at the time of the accident alleged in plaintiff's complaint, then NYSIF reserves the right to deny coverage to you for this occurrence.
(Claimant's Exhibit G, NYSCEF Doc. No. 35 at G386).
Given the particular facts of this case, Claimant's "estoppel arguments are unavailing because the [February 27, 2014] letter notified [Claimant] of the bases upon which [Defendant] could disclaim coverage, and [Claimant has] not shown that [it] was prejudiced by [Defendant's] defense of the underlying action" (see Wesco Insurance Company v Salvo, 209 AD3d 476, 477 [1st Dept. 2022]). Moore Construction Co., Inc. v. United States Fid. & Guar Co., 293 NY 119 [1944] does not require a different result. There, the insurer undertook the defense of the case but never notified its insured subcontractor that a cross-complaint had been filed seeking judgment against it by the general contractor if the latter were held liable. The general [*10]contractor prevailed on its cross-complaint, thus making the insured responsible for indemnification.
An insurer's duty to defend is completely separate from its duty to pay or indemnify an insured under a liability policy. In fact, "[a]n insurer's duty to defend is broader than the duty to indemnify and arises whenever the allegations of the complaint against the insured, liberally construed, potentially fall within the scope of the risks undertaken by the insurer" (Swan USA, Inc. v Wesco Insurance Company, 217 AD3d 987, 988-89 [2d Dept 2023], quoting Salt Constr. Corp. v Farm Family Cas. Ins. Co., 120 AD3d 568, 569 [2d Dept. 2014]). In the underlying third-party claim, once placed on notice, SIF provided a defense on the action, therefore it complied with its contractual obligation. The duty to indemnify on the part of an insurer requires a determination that the insured is liable for a loss that is covered by the policy (Belsito v State Farm Mut. Ins. Co., 27 AD3d 502 [2d Dept. 2006]). As determined above, Defendant has no such obligation where Fisher's injuries were sustained while working as an independent contractor, which does not fall within the policy's unambiguous grant of coverage. Nor, under the particular circumstances of this case, is Defendant estopped from denying indemnification in this matter.
In view of the foregoing, the Court concludes that Defendant is entitled to summary judgment. Accordingly, Defendant has established that there is no coverage for Claimant Jay DiFulvio & Associates, Inc. under the subject policy, and SIF has no obligation to indemnify Jay DiFulvio & Associates Inc. as it relates to the judgment entered against it in the third-party action. 

 CONCLUSION
Accordingly, it is
ORDERED, that Defendant's Cross-Motion for summary judgment (CM-99932) is hereby granted; the Court declares that SIF is under no obligation to indemnify Claimant in this matter; and Claim Number 136506 is dismissed; and it is further
ORDERED, that Claimant's motion (M-99641) is hereby denied.
DATED: August 14, 2024
NEW YORK, NEW YORK
HON. RUTH SHILLINGFORD
Judge of the Court of Claims
Papers considered:
1. Notice of Motion, Affirmation in Support of Claimant's Motion for Summary Judgment of Erin K. Skuce, Esq., and Memorandum of Law, with Exhibits;
2. Stipulated Facts dated June 21 2023;
3. Cross-Motion, Affirmation in Support of Defendant's Cross Motion for Summary Judgment of Katherine Fleming, Esq., and Memorandum of Law with Exhibits; and
4. Reply Affirmation of Erin K. Skuce, Esq., with Reply Memorandum of Law.

Footnotes

Footnote 1:The Court has sua sponte amended the caption to reflect the State of New York as the sole proper Defendant.